HENRY R. DURFEE and SAMUEL B. McINTYRE, as Executors, etc., of CHARLES G. POMEROY, Deceased, Respondents, *v.* FRANCES POMEROY, Appellant, Impleaded with A. MAY McINTYRE and Others.

*Trust — suspended upon the life of a man, not yet married, and upon that of any future wife, is void — when a legacy of income cannot be deemed to be withdrawn from and exist outside of a trust of the residuum of an estate.*

The will of Charles G. Pomeroy, by its first clause, gave his son Rhea, a single man, a life estate in the homestead, with remainder over to his sister Eliza A. McIntyre, in case the son died without issue; by its second clause certain specific personal property was given absolutely to the son, and the third or residuary clause devised the remainder of the estate to his executors and their successors in trust, to pay one-half of the income of the trust estate to the son until he attained the age of forty-five years, at which time the *corpus* was to be transferred to him if the executors considered that he was then a sober man and fit to be intrusted with the property; in case the son died before reaching the age of forty-five years and left issue surviving, the executors were directed to transfer his share to such issue. In case he died before reaching the age of forty-five years and left a widow, but no child or children, the will provided as follows: "Then she is to have and I devise and bequeath to her (the widow) one-half of the income of said half of the rest, residue and remainder of my said property so long as she shall remain his (the son's) widow."

The son married soon after his father's death and died before reaching the age of forty-five, leaving no children, but leaving a widow, who, not having remarried, claimed to be entitled during her life or widowhood to the income of one-quarter of the residuary estate set apart for the son.

*Held,* that the provision devising a quarter of the income of the residuary estate to the widow during her widowhood was void, as it attempted to create an illegal suspension of the power of alienation, by limiting the period of the trust upon a life possibly not in being at the time of the testator's death, inasmuch as the son did not marry until after the death of his father and might have married a woman born after the testator died;

That a construction which would withdraw the provisions for the widow from the trust and treat it as an absolute legacy of a one-fourth part of the income of the testator's estate was not admissible;

That it was the general intention of the testator to secure to his own children for their lives, and ultimately to his grandchildren, the *corpus* of the estate, and to this end to embrace in the trust estate the entire residuum;

That such was the effect of the gift to the executors prefacing the residuary clause, which was not limited by any succeeding words which, in express terms, withdrew any portion of the residuum from the trust estate;

That the other provisions of the will which related to an annual expenditure of $100 for repairs to the homestead and expenditures for a monument and for the support of one Euretta Miles, showed that it was the intention that the executors should have power to make deductions from the estate, affecting the income of the widow, and were inconsistent with a construction under which the widow would be entitled to an absolute legacy of a one-fourth part of the income of the estate.

APPEAL by the defendant, Frances Pomeroy, from an interlocutory judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Wayne on the 27th day of August, 1895, upon the decision of the court rendered after a trial at the Ontario Special Term construing the last will and testament of Charles G. Pomeroy, deceased.

The will of the testator was as follows:

"In the name of God, Amen: I, Charles G. Pomeroy, of the village of Newark, county of Wayne and State of New York, being of sound and disposing mind and memory, do make, publish and declare this my last will and testament, in manner and form following, that is to say:

"*First.* I will and devise the house and lot on which I reside, being my homestead, in the village of Newark aforesaid, including any new house or buildings that I may, after the date of this my will, put upon said premises, to my son, Rhea B. Pomeroy, for and during his natural life; and after his death, if he leaves a wife and she has a child or children by him then surviving, then to his wife during her life, and after her death, to his child or children absolutely in fee; if he leaves no wife, but leaves child or children, then at and after his death to such his child or children absolutely in fee; if he leaves no child or children, then at and after his death, to my daughter, Eliza A. McIntyre, for and during her natural life, and at after her death, to her children absolutely in fee.

"I also set apart, will and bequeath one hundred dollars annually, each and every year, from the net income of my estate, to be expended as my son Rhea may direct, by my executors hereinafter named, for and in repairs to my said homestead and the buildings thereon.

"*Second.* I also will and bequeath to my said son, Rhea B. Pomeroy, all the furniture in my said house and the piano and my library, both medical and private, including all my books, and my

surgical instruments, also two of my horses to be selected by him, and all my harnesses and carriages and carriage robes and sleighs and robes used therewith, that I may leave; also my gold watch and chain, microscope, pictures, safe, beds and bedding, and all my furniture and similar articles used in my said house and barn.

" *Third.* All the rest, residue and remainder of my real and personal property and estate, of every name, kind and nature, wheresoever situate (after deducting said homestead and the articles and property hereinbefore devised and bequeathed), I will, devise and bequeath to my executors hereinafter named, and their successors in trust, upon and unto the uses, purposes and trusts hereinafter named, that is to say :

" The equal one-half of said rest, residue and remainder of my said property and estate I will, devise and bequeath to my said executors, and their successors, in trust, to receive the rents, issues, income and profits (including one-half of the interest on moneys invested) thereof, and pay and apply the same to and for the use of my son, Rhea B. Pomeroy, until he shall arrive at the age of forty-five years, if he shall so long survive, or in case my said son Rhea should not live to reach the age of forty-five years, then to apply the same to the use of my said son during his life.

" When my said son shall arrive at the age of forty-five years, if, in the judgment of my executors, or their successors, he is a sober man and fit to be intrusted with said property, then my said executors, or their successors, are to transfer and convey said one-half of said rest, residue and remainder of my said property and estate to my said son absolutely, to be his absolutely.

" If, when my said son arrives at the age of forty-five years, he is not, in the judgment of my executors, or their successors, a sober man, and is not fit to be intrusted with said property, then my said executors, or their successors, are to retain the same in their hands and control until such time as my said son shall, in their judgment, be a sober man, and fit to be intrusted with said property, and then they are to transfer and convey the same to him, to be his absolutely.

" During the interval before my said son shall arrive at the age of forty-five years, or longer if they should retain possession and control, my executors, or their successors, are not to sell any of my

real estate without my son Rhea's consent, nor shall they during such time repair or rebuild any of my real estate without his advice and consent, and they are to invest any principal or any income thereof in their hands, not necessary for immediate use for the purposes of this will, in bond and mortgages on real estate or in government or New York State securities.

" If my said son, previous to the time of his arrival at the age of forty-five years, or previous to the further time above mentioned, when my said executors or their successors shall transfer and convey to him said half of said rest, residue and remainder of my said property as above provided, shall die, leaving a child or children him surviving, then my said executors, or their successors, shall transfer and convey said above-mentioned half of said rest, residue and remainder of my said property and estate to such his child or children absolutely; if he, in such event of his death, within the periods last aforesaid, should leave no child or children him surviving, but should leave a wife him surviving, then she is to have, and I devise and bequeath to her, one-half of the income of said half of the rest, residue and remainder of my said property, so long as she shall remain his widow unmarried; the other one-half of said income is to be held by my said executors or their successors and paid by them to and for the use of — daughter, Eliza A. McIntyre; in case the wife of my said son should marry again, then the share of said income so bequeathed to her is to go to my daughter, Eliza A. McIntyre, if she then survives; if not, to her children.

" If my said son Rhea should die before by said executors or their successors, shall, under the foregoing provisions, transfer and convey to him the said one-half of the rest, residue and remainder of my said property and estate, leaving no child or children or wife surviving, then my said executors or their successors are to hold said one-half of said rest, residue and remainder; and I bequeath and devise the same to them in trust to pay the rents, issues, profits and income of the same to and for the use of my said daughter, her husband and children, under and upon the same trusts, and for the same periods, as are herein below provided in regard to the other one-half of said rest, residue and remainder of my property and estate herein below devised and bequeathed.

" *Fourth.* The other one-half of all the rest, residue and

remainder of all my said property and estate remaining after deducting the homestead and the articles and property bequeathed in the above paragraphs of this will marked 'First' and 'Second,' I will, devise and bequeath to my executors, hereinafter named, and their successors, in trust, to receive the rents, profits and income thereof (including half the interest on moneys invested), and apply them to the use of my daughter, Eliza A. McIntyre, for and during her natural life, and from and after her death, to the use of her husband, Samuel B. McIntyre, and of her children equally, share and share alike, for and during the life of said Samuel B. McIntyre, that is, her said husband is to have one share and each of her children is to have one share of said income, but if said Samuel B. McIntyre should marry again after the decease of my said daughter, then his share of said income is to cease, anything herein to the contrary notwithstanding.

" If my said daughter should die leaving no child or children, but leaving a husband, said executors or their successors shall apply the rents, profits and income of said half of said remainder of my estate to his use so long as he remains single and unmarried, and no longer.

" And if my said daughter should die leaving no husband, but leaving child or children, then my said executors, or their successors, are to transfer and convey the said last-mentioned one-half of said rest, residue and remainder of my said property and estate to such her child or children absolutely and equally, and in that case I will and devise the same to them.

" If my said daughter should die leaving a husband and a child or children, then at and after the death or re-marriage of her said husband, said executors or their successors are to transfer and convey said half of said rest, residue and remainder of my said property and estate, to her said child or children, and I will and devise the same to them in that event.

" If my said daughter should die leaving no husband or children, then and in that case said half of said residue and remainder of said estate shall go to my executors aforesaid, and their successors, the rents and profits and income thereof to be paid and applied by them to the use of my said son Rhea for the same time as is above provided for the other half of said residue and remainder, and upon the same trusts, for the same length of time, and upon the same con-

ditions as is above provided for the other half of said residue and remainder of my said property and estate.

"*Fifth.* The rents, profits and income herein above provided to be paid to my said son Rhea, shall be paid to him quarterly or semi-annually, as he may desire, or oftener if convenient.

" The personal property and income herein willed and bequeathed to, and for the use of my said son Rhea shall not be liable for his debts.

" Neither of children shall have power to incumber, forestall or anticipate any part of the income provided for his or her use in and by this will.

" My executors, on taking possession of my estate, shall make a full list of all the property and estate left by me, and furnish a full copy of the same to my son Rhea, and to the other heirs if they desire it.

. "*Sixth.* I will and direct that a home shall be provided for my wife's sister, Euretta Miles, for and during her life, at my home-stead, and she shall have her whole support from my estate in sick-ness and health, and burial, the expenses whereof shall be paid by my executors out of the net income of the whole of my estate, the burial of said Euretta Miles to be on my lot in the Newark Cemetery unless she should dictate otherwise.

" In case of my son Rhea's death, so he is not at the homestead to keep house, and she should wish to live somewhere else, she is to have the like support elsewhere where she may select.

" *Seventh.* In case I do not put up a family monument on my burial lot in the Newark Cemetery during my lifetime, then my executors are to put up one at a cost not to exceed $600.00 nor less than $500.00 within three years after my death, to be paid for out of the income of my whole estate, the character and style of which shall be determined by my son Rhea.

" *Lastly.* I make, constitute and appoint my son-in-law, Samuel B. McIntyre, and Henry R. Durfee, Esqr., Attorney at Law, of Pal-myra, to be the executors of this my last will and testament, hereby revoking all former wills by me made.

" In witness whereof I have hereunto subscribed my name and affixed my seal this 4th day of August, in the year 1884.

· " CHARLES G. POMEROY.    [L. s.]"

*Edwin K. Burnham* and *Stephen K. Williams*, for the appellant.

*Raines Brothers*, for A. May McIntyre and another, respondents.

*Henry R. Durfee* and *Samuel B. McIntyre*, respondents, in person.

Judgment affirmed on the opinion of ADAMS, J., delivered at Special Term, with costs and disbursements to respondents and appellant, payable out of the estate.

All concurred; except ADAMS, J., not sitting.

The following is the opinion of ADAMS, J., delivered at the Special Term:

ADAMS, J.:

The plaintiffs, who are the executors of the will in question, in their complaint allege that construction of that instrument, in several important particulars, is necessary to the due and proper administration of the estate committed to their charge, but by consent of all parties the only question which is at present submitted to the court for its adjudication is that which relates to the interest in such estate of the defendant Frances Pomeroy.

In order to clearly appreciate the attitude towards the estate which this defendant occupies it will be necessary to detail, with considerable particularity, the disposition which the testator has attempted to make of his property, and the conditions existing at the time of his death. He died leaving two children, a son and a daughter. The son, Rhea, was a young man of intemperate habits, and the defendant, who is his widow, was a domestic in the testator's family. There is some reason to suppose that the son's attachment for her was known to the father, but however this may be, it is a matter of minor consequence.

By the first clause of the will this son is given a life estate in the homestead, with remainder over to his sister, Eliza A. McIntyre, in the event of his dying without children. By the second clause certain specific personal property is given absolutely to the son, and by the third, or residuary clause, all the rest, residue and remainder of the testator's estate, both real and personal, is devised and bequeathed to his executors in trust for the purposes thereinafter named. The trust thus created contemplates, among other things, the payment of

one-half of the income arising from the trust estate to Rhea until he shall attain the age of forty-five years, and when that period arrives the *corpus* of his share of such estate is to be transferred to him absolutely, if, in the judgment of the executors, he is then "a sober man and fit to be entrusted with said property," but in case of his death before reaching the age of forty-five years, leaving a child or children him surviving, the executors are directed to transfer his share of the estate to such child or children, but, in the event of his death within the period last aforesaid, leaving a widow but no child or children, then the will further provides, "I devise and bequeath to her one-half of the income of said half of the rest, residue and remainder of my said property so long as she shall remain his widow," and in case she should marry again her share of such income is given to the daughter, Eliza A. McIntyre, who also receives a life interest in the remaining moiety of the residuary estate. The will in question bears date the 4th day of August, 1884. The testator died December 14, 1887, leaving considerable real estate, and also personal property to the amount of at least $14,000.

Shortly after his father's death Rhea was married to the defendant, and soon thereafter, and prior to his arrival at the age of forty-five, he departed this life, leaving the defendant but no child or children him surviving. The widow, who has never remarried, now insists that by the terms of the will she is entitled to the income, during her life or widowhood, of one-quarter of the residuum of the estate, whatever that may prove to be; and it is the claim thus urged that raises the issue which, in its determination, seems to demand a legal construction of the will in question.

The first proposition suggested by a reading of this instrument is that it contains an attempted suspension of the power of alienation of a portion of the testator's property beyond the period permitted by the statute.

In other words, that inasmuch as Rhea did not marry until after the death of his father, there was a life possibly not in being at the time of the testator's death, and that, consequently, such provision is repugnant to the Statute of Perpetuities, and, therefore, void.

Such, indeed, does seem to be the law of this State. It is, perhaps, carrying the doctrine to an extreme limit, and it is a rule which will undoubtedly prove a harsh one in many cases, and per-

haps in none more so than in the case under consideration, where it was unquestionably the intention and desire of the testator to make some provision for his son's wife in the contingency of his marrying and leaving a wife surviving him. But the court cannot concern itself with the operation of any rule. It must apply the law as it finds it, and it is certain that the principle contended for has been adjudicated in a case, the circumstances of which were not unlike those which are here being considered, and that adjudication has, in several instances, been quoted with approval by the court of last resort. (*Schettler* v. *Smith*, 41 N. Y. 328; *Burill* v. *Boardman*, 43 id. 259; *Knox* v. *Jones*, 47 id. 397; *Smith* v. *Edwards*, 88 id. 104; *Tiers* v. *Tiers*, 98 id. 573; *Haynes* v. *Sherman*, 117 id. 437; *Underwood* v. *Curtis*, 127 id. 540.)

Recognizing the fact that this court must of necessity be concluded in its determination of this question by the authority first cited, the defendant's counsel insists that the will is capable of a construction which renders the law of that case inapplicable and suggests that the provision for the defendant be regarded as withdrawn from the trust and treated as an absolute legacy of the one-fourth part of the income of the testator's estate.

This contention is presented most elaborately and with no little adroitness, certain words and phrases being ingeniously selected which, isolated from their context, would seem to warrant such a construction, and then counsel seeks to fortify his position with the further suggestion that the construction for which he contends would enable the court to regard the obvious intention of the testator. But while anxious to sustain rather than to invalidate every testamentary disposition of property where the intention of the testator is made clearly manifest, the court cannot, even for the accomplishment of so desirable a result, do violence to certain well-established canons of construction, one of which is that when the general plan or scheme of a testator is ascertained, effect must be given to it, even at the sacrifice of a particular intention which is inconsistent with it. (See opinion of SUTHERLAND, J., *Lovett* v. *Kingsland*, 44 Barb. 561–567.) The first endeavor, therefore, must be to determine, if possible, upon what general plan or basis the testator designed the disposition of his estate. Fortunately, the language of his will, taken as a whole, leaves very little room for

doubt upon this subject, for it requires but a casual examination to reach the conclusion that the prime object which he had in mind, so far as the residuum of his estate is concerned, was the making of a suitable provision for his own children during their lifetime with the ultimate intention of securing to his grandchildren the *corpus* of the estate; and to this end a trust was created and the trust estate was to consist of the entire residuum whatever it might be.

It is true that in making provision for the possible contingency that his son would marry and then die leaving a widow and no children, he uses this language : " Then she (meaning the widow) is to have, and I devise and bequeath to her, one-half of the income of said half of the rest, residue and remainder," etc., but how can the meaning which is sought to be given to these words be made to harmonize with the primal idea that his trustees were to take control of all his residuary estate and which is expressed in the phrase. " All the rest, residue and remainder of my real and personal property and estate, of every name, kind and nature wheresoever situate * * * I will, devise and bequeath to my executors hereinafter named, and their successors, in trust, upon and unto the uses, purposes and trusts hereinafter named ? " There are no succeeding words which, in express terms, withdrew any portion of the residuum from the trust estate, and to imply any such intention upon the part of the testator would result in much confusion and lack of harmony, for in other parts of the will direction is made that from the net income of the estate $100 shall be expended annually in repairs to the homestead; that a monument, costing not to exceed $600, shall be erected and paid for out of the income of the whole estate, and that the support and maintenance of one Euretta Miles, as well as her funeral expenses, shall be provided for from the same source.

If, then, the provision for the defendant is to be regarded as a bequest of income, it is certainly subject to proper deductions for the purposes just specified, and these deductions must necessarily be made by some one other than the defendant. The mere statement of this proposition is sufficient, I think, to show quite conclusively that whatever interest the defendant might have in the estate was inseparable from the trust, and if so, then it is impossible to give to the will the construction contended for.

The learned counsel for the defendant cites several authorities which, he insists, fully support him in the position he occupies, but it seems to me that it is not a difficult matter to distinguish them from the case in hand. In *Mason* v. *Jones* (2 Barb. 229), upon which much stress is apparently laid, the testator had devised to his executors in trust one-half of the estate, from the income of which they were directed to pay certain specific annuities to the annuitants therein mentioned, and in order to uphold the will the court held that several trust funds were created and that the annuities were a charge upon the estate. · But, as has been stated, the rents and profits were not to be distributed among certain beneficiaries, but from that source annuities which were certain in their amount were to be paid to them.

The facts in the case of *Griffen* v. *Ford* (1 Bosw. 123) were quite different from those in the present case. There the testator directed his trustees to apply so much of the rents and profits of his estate as might be necessary towards the support and maintenance of his wife as long as she remained his widow, and it was held that this was in the nature of an annuity; that it did not effect a suspension of the power of alienation, because it was within the power of the trustees, or of the court to fix upon a specific sum to be set apart for the widow's support, or it was within her power to accept a gross sum and release the estate. But such is not the case with this defendant for, as has already been shown, her interests in the estate could only be satisfied by transferring to her one-quarter of the net annual income of the estate during her widowhood, which may be equivalent to saying during her lifetime.

The case of *Matteson* v. *Matteson* (51 How. Pr. 276) is one in which it appears that the testator created no trust, but gave directly to his wife one-half of all the income of his real and personal estate, which, of course, amounts to nothing more than a charge upon the estate and does not suspend the power of alienation. This would be ample authority for the defendant if, as claimed, her interest in the testator's estate were not affected by, and embraced in, the trust.

To epitomize the whole matter, I am persuaded that the will under consideration must be construed to contain a trust which embraces the defendant's interest in the estate; that such trust is

one expressly recognized by the statute (1 R. S. 728, § 55, subd. 3); that the necessary effect thereof upon so much of the estate as would otherwise belong to the defendant, is to create an illegal suspension of the power of alienation as to such portion; that upon the death of Rhea Pomeroy, one-quarter of the residuary estate of Dr. Pomeroy became the absolute property of his daughter, A. Eliza Pomeroy, and that she was likewise entitled to the income from the remaining quarter during her lifetime.

Further construction does not seem to be required by the exigencies of the case, and, therefore, judgment is ordered in accordance with the views herein expressed, with costs to both parties to be paid out of the estate.