(48 Misc. Rep. 108)

### HAYDEN v. SUGDEN et al.

### SAME v. ARNOLD et al.

(Supreme Court, Special Term, New York County.   August, 1905.)

**1. CONVERSION—DISCRETION OF TRUSTEE.**

Where testatrix devised her residuary estate to trustees, either to retain the same in its then state of investment or to convert it into money, to be invested for the purposes of the trust, and directed that the trustees might postpone the conversion as long as they saw fit, there was no equitable conversion of such residuary estate.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Conversion, §§ 43, 46, 47, 50.]

**2. WILLS—TRUSTS—VALIDITY—DEVISE TO INDIVIDUALS OR TO CLASS.**

A will devised a residuary estate in trust to pay the income to the husband of testatrix during his life, and then gave it in trust to such children of testatrix as should attain the age of 25 years, or marry under that age, in equal shares, and provided that in case of the death of any child during testatrix's lifetime the children of such child should take the share their parent would have taken if such parent had survived testatrix and attained the age of 25 years. *Held*, that a trust was created for each child, the interests being several, though the property was to be kept undivided for convenience of investment and administration, and the remainders taken by the children were vested remainders, and consequently the trusts were valid.

**3. PERPETUITIES—PROVISIONS FOR ACCUMULATION—EXTENSION BEYOND MINORITY—VALIDITY.**

A provision for the accumulation of income of a trust fund for a child until he reaches the age of 25 years is good during the minority of the child.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Perpetuities, §§ 67, 69, 70.]

**4. PERPETUITIES—SUSPENSION OF ALIENATION—CONSTRUCTION OF INSTRUMENTS.**

Where a trust contains a power of appointment to a daughter to dispose of the fund upon such trusts and in such manner as she may designate in case she shall have no son who shall attain the age of 21 years or daughter who shall attain that age or marry, without further providing for the disposition of the estate in default of the appointment, the trust is continued beyond the period permitted by Real Property Law, Laws 1896, p. 565, c. 547, § 32, forbidding the suspension of the power of alienation for a longer period than two lives in being.

**5. SAME.**

Where a proposed estate cannot be created by direct devise without suspending the power of alienation for more than two lives in being, in violation of Real Property Law, Laws 1896, p. 565, c. 547, § 32, it may not be created through the intervention of a power.

**6. SAME.**

Where an estate may, in a certain contingency, vest within the period of two lives in being, as required by Real Property Law, Laws 1896, p. 565, c. 547, § 32, the trust can be upheld only in case the uncertainty ceases within the statutory period.

**7. SAME.**

A power of sale in a will, creating a trust to continue for more than two lives in being, in violation of Real Property Law, Laws 1896, p. 565, c. 547, § 32, does not take the trust out of the statute, where the proceeds remain subject to the trust.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Perpetuities, § 51.]

8. TRUSTS—PARTIAL INVALIDITY—EFFECT ON VALID PROVISIONS.

Where the principle provisions of a trust are separable from other limitations which are obnoxious to Real Property Law, Laws 1896, p. 565, c. 547, § 32, prohibiting the suspension of the power of alienation for a longer period than two lives in being, the principal provisions may be upheld and the trust so far sustained.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, § 72.]

9. SAME—POWER IN TRUST—EFFECT.

A power to apply the principal of a trust to the use of the beneficiary merely renders the trust defeasible to the extent the power is exercised, and does not invalidate the trust nor interfere with the vesting of the remainder.

10. ALIENS—RIGHT TO HOLD LAND—TRUST ESTATES.

Under Real Property Law, Laws 1897, p. 706, c. 593, § 5a, providing that any citizen of a nation which by its laws confers similar privileges on citzens of the United States may take, hold, and convey real estate within the state in the same manner as if such person were a citizen of the United States, a married woman who is a citizen of the United States may create a trust for the benefit of her surviving children and husband, who are subjects of Great Britain, which permits aliens to take and dispose of land, and may appoint British subjects as trustees, notwithstanding section 4 of the statute of wills (2 Rev. St. [1st Ed.] pt. 2, p. 57, c. 6, tit. 1), providing that every devise of an interest in land to a person who, at the time of the death of testator, is an alien not authorized by statute to hold real estate, shall be void.

11. PARTITION—WHEN DECREED.

Where the will under which infant co-tenants claim requires judicial construction, partition may be decreed as against such co-tenants, although their immediate ancestor derived her estate under a will containing a power of sale.

Action by Henry W. Hayden against Edwin Percy Sugden and another, as trustees, etc., and others. Judgment ordered.

Ward, Hayden & Satterlee, for plaintiff.
T. Astley Atkins, for trustees.
Morris A. Tyng, for guardian ad litem.

CLARKE, J. These actions are brought to partition certain premises in this state. It is conceded that the properties should be divided into lots and sold. The main question presented is the construction of the will of Jessie Sugden. Both complaints pray that the exact interests of the husband and children of the testatrix and the trustees named in the will may be judicially settled and determined. The will, dated December 29, 1897, was drawn and executed in England, where the testatrix died on October 25, 1901, seised of undivided interests in the premises described in the complaints. She left her surviving her husband, two infant daughters, and an infant son, and they, as well as the trustees, reside in England. The will was probated in London and letters testamentary issued to the trustees, to whom ancillary letters testamentary were issued by the surrogate of New York county. The will is apparently drawn for the purpose of creating trusts of real and personal property, which may be permissible under the laws of Great Britain, but which in part are forbidden by the statutes of this state. The will, as far as it affects the interests of Jessie Sugden in the premises in question, must be construed as a will of real property. The will does not make an equi-

table conversion of the premises. After bequeathing several small legacies the will provides:

"I devise and bequeath all my real and personal estate whatsoever and wheresoever not hereby otherwise disposed of unto my trustees upon trust that my trustees shall either retain the same in such state of investment as it may be at my death or shall sell, call in and convert into money the same, or such part thereof as shall not consist of money, and shall with and out of the moneys produced by any such sale, calling in or conversion and out of my ready money pay my funeral and testamentary expenses and debts and the said legacy, and shall invest the residue thereof as hereinafter authorized, and shall stand possessed of the said residuary trust property and moneys and the investments for the time being representing the same (hereinafter called 'the residuary trust fund')" in trust as by the will further provided.

The trustees are by this provision to stand possessed of the residuary trust property. This is the same as the residuary trust fund, and includes not only the personalty remaining after payment of the debts and legacy, but also all the real estate of which testatrix died seised. Moreover, by the ninth paragraph of the will the testatrix declares:

"My trustees may postpone the sale and conversion of my real and personal estate, or any part thereof, for so long as they shall think fit, and that the rents, profits and income to accrue from and after my decease of and from such part of my estate as shall for the time being remain unsold and unconverted shall be paid and applied to the person or persons and in the manner to whom and in which the income of the moneys produced by such sale and conversion would for the time being be payable or applicable under this my will if such sale and conversion had been actually made."

By the tenth clause the trustees are given power to appoint agents in the United States of America for the purpose, among others, "of cultivating any of my property which may be abroad." The eleventh clause provides: "Any moneys to be invested hereunder may be invested in or upon any of" the personal properties specified. The intention of the testatrix was not to impress a new character upon her real estate. When executors or trustees are merely authorized to change real property into personal property, as they may think fit, and their judgment is to be formed from conditions existing after the death of the testatrix, the property will not be deemed to be equitably converted. Harris v. Clark, 7 N. Y. 242.

Mr. Justice Patterson has recently summarized the rules of law on the subject of equitable conversion by wills in Phœnix v. Trustees of Columbia College, 87 App. Div. 438, 84 N. Y. Supp. 897, which was affirmed on the opinion below in 179 N. Y. 592, 72 N. E. 1149, as follows:

"The inquiry is as to the intention of the testator. It is the rule of law in this state that such intention must appear plainly, distinctly and unequivocally. Scholle v. Scholle, 113 N. Y. 261, 21 N. E. 84; Clift v. Moses, 116 N. Y. 144, 22 N. E. 393. An intention to convert may be manifested in various ways: First, by a positive direction to the executors or trustees to make it; * * * second, the intention may be ascertained from the necessity of a sale, in order to carry out the general scheme of a testator; * * * and, third, the property may be deemed to be equitably converted, when the purpose of the testator would fail without such conversion."

In the will of Jessie Sugden there is no positive direction to sell. A sale of the American property does not appear to be necessary to carry out the scheme of her will, which provides for the payment of interest and income. It does not appear that this property must be sold to pay debts, as in Matter of Gantert, 136 N. Y. 106, 32 N. E. 551, or to pay legacies, as in Fraser v. Trustees of U. P. Church, 124 N. Y. 479, 26 N. E. 1034, in order to effectuate the intent of the testator. In this case the trustees are given a discretionary power of sale of the properties devised to them to aid in the convenient administration of trusts. But the income from the real estate may as readily be applied and final division may be made of the realty.

In Matter of Tatum, 169 N. Y. 514, 518, 62 N. E. 580, 581, Judge Gray says:

"Unless the purpose of the testator will fail without a conversion, equity will not presume it. There should be an implication of a direction to convert, so unequivocal and so strong as to leave no substantial doubt in the mind. Hobson v. Hale, 95 N. Y. 588; Scholle v. Scholle, 113 N. Y. 261, 21 N. E. 84. Indeed, conversion, to be decreed, must be so necessary, as that, without it, the provisions of the will would be rendered unreasonable and incapable of a just and an effective operation."

The material provisions of the will declaring the trust may be briefly stated, and for convenient reference divided into paragraphs as follows: (1) In trust to pay the income to my husband during his life until he shall marry again (but subject to the power of advancement hereinafter given to my trustees) and from and after his decease or second marriage. (2) In trust for all my children who shall attain the age of 25 years or marry under that age in equal shares. In case any child of mine shall die in my lifetime, the children of any such child to take the share which his, her, or their parent would have taken in the residuary trust fund if such parent had survived me and attained the age of 25 years. If there shall be no child or grandchildren of mine, then (3) in trust for my husband absolutely. if he shall survive me; but if he shall predecease me (4) in trust for my sister and my brother in equal shares; (5) provided always and I hereby declare that my trustees shall retain the share of each of my daughters in the residuary trust fund upon trust to pay the interest thereof to such daughter during her life, and so that if and while she shall be under coverture the same shall be for her sole and separate use and she shall not have power to dispose of the same in the way of anticipation, but with power, nevertheless, for such daughter to appoint by deed or will that after her decease the whole or any part of such income shall be paid to any husband who may survive her during his life or for any less period. (6) And from and after the decease of such daughter and subject to any appointment which may be made to her husband in trust for the children of my same daughter, or any of them or any of their issue, upon certain conditions in such share and manner as she shall by deed or will appoint. And in default of appointment (7) in trust for the children of my same daughter, who being sons shall attain the age of 21 years, or being daughters shall attain that age or marry, in equal shares. And in case there shall be no child of my same daughter, who being a son

shall attain the age of 21 years, or being a daughter shall attain that age or marry, then (8) upon such trusts and in such manner as my same daughter shall by deed or will appoint. And in default of such appointment (9) in trust for my other children who attain the age of 25 years or marry, in equal shares, and so that the shares accruing to any daughter shall be subject to the trusts hereby declared concerning the original share of the same daughter. (10) I declare that my trustees may, after the death or future marriage of my husband, apply the whole or such parts as they think fit of the income of the contingent, expectant, or presumptive share of any child of mine for or towards his or her maintenance, education, or benefit during such time as such child shall be under the age of 25 years. (11) And shall during the suspense of absolute vesting of any such share accumulate the surplus (if any) of the income thereof at compound interest, but with power to apply any such accumulation in any subsequent year for the maintenance, education, or benefit of the child entitled as aforesaid. (12) I declare that my trustees may at their own absolute discretion, notwithstanding that any person may for the time being be entitled to the income thereof raise any part or parts not exceeding together one moiety of the then expectant presumptive or vested share of any child or grandchildren of mine in the residuary trust fund, and may apply the same for the advancement or benefit of such child or grandchildren in such manner as my trustees shall think fit. (13) And, further, that my trustees may, notwithstanding the trusts hereinbefore contained, raise out of the residuary trust fund and pay to each of my children on his or her marriage a sum not exceeding £1,000 for his or her own absolute use and benefit. The testatrix intended to create trusts to provide an income for her husband duing his life or until his second marriage, then for an accumulation of rents and profits for the benefit of her infant son and two infant daughters, and, further, to provide an income for her son until he should reach the age of 25 years, and for her daughters during their respective lives. There are further provisions concerning the powers of appointment given the daughters and the disposition of their shares in case such powers are not exercised.

Before considering these latter provisions and looking at the general plan for benefit of husband and children, it appears that four persons are to share in the beneficial enjoyment of the estate during their lives. The corpus of the estate is not specifically divided into separate parcels. It is, however, clear that the testatrix intended that each child was to take a separate share after the termination of the husband's estate. There is not, therefore, one trust limited upon the four lives. The shares and interests may be several, even though the trust fund or corpus remain undivided, where it was clearly the intention that the income and principal given in equal shares were to constitute separate trusts under which the rights of each beneficiary are separate and distinct in his share of the income, and the property is kept in solido for mere convenience of investment or administration. Schermerhorn v. Cotting, 131 N. Y. 48, 29 N. E. 980; Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481. In the case last cited there was, as in this case, what was denominated a "common

fund" remaining in the possession and control of the trustees until final distribution of the estate, but the court held that, as the interest in the income was separate and distinct, there were separate trusts. So here the testatrix has placed the "residuary fund" in the hands of the trustees, but the division of the proceeds being into shares, each separately disposed of, the disposition is not to be considered as one of the estate in entirety. If each separate division is a valid trust, it will be sustained. Moore v. Hegeman, 72 N. Y. 376; Hillyer v. Vandewater, 121 N. Y. 681, 24 N. E. 999. We have, therefore, three separate trusts. Each trust is limited first by the life of the husband, and, further, by the provision for the child, which in the case of the son is a provision for an accumulation for a period of years and a payment of income while he is under the age of 25 years, and in the case of each daughter is a provision for such accumulation and a payment of income for the life of such daughter. Assuming that the trust for accumulation is valid as a trust for a minority, we have in each case a trust limited by two lives. I say two lives because a suspension for a minority is a suspension for a statutory life. "A minority is a life." Benedict v. Webb, 98 N. Y. 460; Oxley v. Lane, 35 N. Y. 340, 345; Savage v. Burnham, 17 N. Y. 561, 572. And a suspension during the minority of one, followed by a further suspension during the life of the same person is in legal sense a single suspension ab initio for but one life. Benedict v. Webb, 98 N. Y. 460, 466. The trust provision for the son, to pay him income while he is under 25 years, is equivalent to a provision to pay him income until he is 25 years of age, if he live so long, and is, therefore, limited by a life. So that in each case had there been no further provision suspending the power of alienation the trusts would be valid.

This brings us to the peculiar provisions made concerning the daughters' shares contained in sections 5 to 9, inclusive, of the will. By these provisions certain powers of appointment were given to each daughter. By section 5 power is given to continue payment of a part or the whole of the income to any husband who may survive her. This is the only provision specifically referring to income. The next power, section 6, is stated to be subject to the appointment for the husband, "in trust" for such children or grandchildren of the daughter in such share and manner as she shall appoint. By section 8, if there be "no child of my same daughter who being a son shall attain the age of 21 years or being a daughter shall attain that age or marry," then appointment may be made upon such trusts and in such manner as the daughter designates. These are the powers. Sections 7 and 9 provide for disposition in default of the exercise of them. "And in default of such appointment" (section 7) "in trust for the children of my same daughter who being sons shall attain the age of 21 years or being daughters shall attain that age or marry in equal shares and if there be only one such child the whole to be in trust for that one child." If there are grandchildren, the appointment must be made in the class or this clause becomes operative; but, if there are no grandchildren and no appointment under section 8, then, by section 9—

"In trust for my other children who attain the age of 25 years or marry in equal shares and so that the share or shares accruing to each or any daughter of mine under this trust shall be subject to the trusts hereby declared concerning the original share of the same daughter under this my will."

I am of opinion that these provisions continue the trust term beyond the time permitted by statute.

It must be noted that the use of the words "in trust" is prefixed to each disposition, whether it be by way of appointment under the power or by devise in default thereof. The nature of the trust is not in terms defined, except in the fifth section, but the only meaning possible is for a continuation of the trust to pay the income, except that in the eighth section the daughters are given power to designate the terms upon which the trusts may under that section be continued. The attempted continuance of the trust after the decease of the husband and a daughter for the benefit of the daughter's husband by power of appointment of the income (section 5) is invalid, in that it suspends the absolute power of alienation for a longer period than two lives in being, and, moreover, the daughter's husband is not a life in being at the time of the creation of the estate. Van Brunt v. Van Brunt, 111 N. Y. 178, 19 N. E. 60; Tiers v. Tiers, 98 N. Y. 568; Schettler v. Smith, 41 N. Y. 328; Durfee v. Pomeroy, 7 App. Div. 431, 40 N. Y. Supp. 1022. The same reasons apply to the other powers, whereby the estate would be kept in the hands of the trustees during the term designated by the appointment in excess of two lives, and not in being at the creation of the estate. Where the proposed estate could not be created by direct devise, except by limiting the necessary suspension by more than two lives, it may not be created through the intervention of a power. Booth v. Baptist Church, 126 N. Y. 215, 240, 28 N. E. 238. The alternate provisions in case of default in the exercise of the power of appointment are no better. If there be grandchildren by the daughters, the trust is to be continued for their benefit; if sons, until they are 21 years, or, if daughters, until they attain that age or marry. If there be no grandchildren, the property is still to be retained in trust for the children of testatrix who attain the age of 25 years, or marry, in equal shares; the daughters' shares being further subject to the trust under which they are to receive income for life. Under this clause, upon the death of a daughter without children, the suspension of the power of alienation of her share would be further limited as to one-half by the minority of her brother, if living, and as to the other half by the life of her sister, or, if the brother had predeceased her, then the whole share, by the life of the surviving sister. In case one of the daughters survived both her brother and sister, there being no other child of the testatrix surviving, no provision appears to be made as to the disposition of such share, and it would, therefore, vest in the heirs of the testatrix. A situation is therefore presented in some respects analagous to that in Purdy v. Hayt, 92 N. Y. 446, where the trust was held valid. As in that case, the ultimate remainder is contingent, the interests of the daughters, although undivided, are distinct shares, and the share of the sister dying first is limited to pass through more than two life estates before reaching the ultimate remainder, while

the share of the sister second to die may be limited to pass through only two successive life estates before reaching the ultimate remainder. But in that case, as there were but two beneficiaries, the uncertainty must cease within the statutory period, and within that time one of the sisters' shares must be disclosed as valid, whereas here both sisters may die before the brother and during his minority, in which event the limitation upon neither share would terminate within the statutory period. It has been held that an uncertainty of this class is fatal, unless it must cease and the remainders become capable of classification as valid or invalid within the statutory period. Dana v. Murray, 122 N. Y. 604, 26 N. E. 21. Moreover, the contingency is remote, as the clause is limited upon a failure by the daughter to make appointment or leave children her surviving. I therefore conclude that the provisions beyond those for the life of the husband and daughter are in violation of the statute. Real Property Law, Laws 1896, p. 565, c. 547, § 32. The power of sale given the trustees does not obviate the invalid suspension. By such sale the proceeds are not freed and vested at once in persons who can convey an absolute fee. Robert v. Corning, 89 N. Y. 225. In this case the proceeds are to become part of the "residuary trust fund." A power of sale does not avoid the statute where the proceeds of such sale remain subject to the terms of the trust. Brewer v. Brewer, 11 Hun, 147, affirmed as Bremer v. Penniman, 72 N. Y. 603; Allen v. Allen, 149 N. Y. 280, 43 N. E. 626; Cruikshank v. Home for the Friendless, 113 N. Y. 337, 21 N. E. 64, 4 L. R. A. 140; Hobson v. Hale, 95 N. Y. 588. The disposition as to the two-thirds of the estate may not be sustained, therefore, in its entirety. The attempted continuance of the trusts after the lives of the daughters are void. But it is clear that the primary objects of testatrix's bounty were her husband and her children. The remaining provisions whereby she attempted to further provide for those who were to come after her daughters may be disregarded, without interfering with the principal disposition for the benefit of her immediate family. The rule is established, as stated by Judge Gray in Henderson v. Henderson, 113 N. Y. 1, 16, 20 N. E. 814, 818:

"If the principal disposition can be upheld, we should disregard ulterior, contingent limitations, which threaten violation of statutory rules respecting the ownership of property."

So a trust limited upon the life of a widow was held separable from a void limitation subsequent of a term of years. Underwood v. Curtis, 127 N. Y. 523, 28 N. E. 585; Kennedy v. Hoy, 105 N. Y. 134, 11 N. E. 390.

Applying this rule of construction of these provisions as to the daughters' shares, one-third of the estate is held in trust to pay the income to the husband during his life, and, after his death, to a daughter, and a second third upon similar trust limited by the lives of the husband and the other daughter. In addition to these trust provisions, by sections 2, 10, 11, and 12 of the will, direction is given for the accumulation of income for the benefit of all the children until they attain the age of 25 years, with power to apply the income for their benefit and with power of advancement given the trustees

up to one-half of the share of each beneficiary. When a minor reaches majority, the trust for accumulation must cease. Goebel v. Wolf, 113 N. Y. 405, 415, 21 N. E. 388, 10 Am. St. Rep. 464. But the direction for accumulation for a longer term than minority is void only for the excess (Real Property Law, § 51, subd. 3; Radley v. Kuhn, 97 N. Y. 26, 32), and does not affect the validity of other parts of the general trust scheme. Schermerhorn v. Cotting, 131 N. Y. 48, 61, 64, 29 N. E. 980. The scheme may also, as here, provide that a part of the rents may be applied to the use of the infant, instead of accumulated. Roe v. Vingut, 117 N. Y. 204, 218, 22 N. E. 933. And this provision for payment of part of the income during minority may be coupled, as it is here, in the case of the daughters' shares, with a provision to pay over all the income for life upon reaching majority. Horton v. Cantwell, 108 N. Y. 255, 265, 15 N. E. 546. The provision for the advancement of a moiety of each share in the discretion of the trustees is valid as a power. "An express trust to receive and apply or receive and accumulate rents may be coupled with a power to apply the principal to the use of the beneficiary. This latter is not a trust, for no express trust is authorized for that purpose. But as a power it is valid. * * * Such a feature does not interfere with the vesting of the remainder limited on the trust, but merely renders it defeasible." Chaplin, Exp. Trusts & Powers, § 618, p. 505. See, also, Real Property Law, § 31; Van Axte v. Fisher, 117 N. Y. 401, 22 N. E. 943. The gift to each child of £1,000 upon his or her marriage (section 13 of will) may also be given effect as a power in trust in the same way as the power to make advancement. It now becomes necessary to construe the language of section 2 of the trust, whereby general provision is made for the testatrix's children. The special trust provisions for the daughters have already been construed as merely taking effect to continue the trust to pay income to them during their respective lives. As thus qualified, section 2 applies equally to the three children. It reads:

"In trust for all my children who shall attain the age of 25 years or marry under that age in equal shares."

As has been assumed in previous discussion, the words "in trust" refer to a continuance of the trust to pay income which is created by the preceding section for the benefit of the husband "and from and after his decease or second marriage" continued "in trust for all my children." Each child is by this section given an equal share in the entire income and principal. That the language was intended to devise an interest in the principal is made more clear by the provision in the same section devising to grandchildren, in case testatrix's children predeceased her, "the share which his, her or their parent would have taken of and in the residuary trust fund if such parent had survived me and attained the age of 25 years." The descriptive words, "who shall attain the age of 25 years or marry under that age," do not limit the trust to pay income by a term other than lives which would defeat the trust. Neither, in my opinion, do they create a contingency upon the happening of which the vesting of each child's share is made dependent, but the remainders vested upon the death of testatrix, and are not contingent upon the attainment of the

specified age or marriage. The general rule is that a remainder is not to be considered as contingent in any case where, consistently with the intention of the testator, it may be construed as being vested. Hersee v. Simpson, 154 N. Y. 496, 48 N. E. 890. Moreover, in this case, after the death of the husband, the income of each share is to be paid to the remaindermen. This circumstance has invariably been given great weight in showing an intention to vest the interests of the remaindermen. Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481. Although there is language in the will wherein an opposite legal conclusion is stated by the draughtsman in describing the share as "contingent, expectant or presumptive," I consider that such words refer merely to the time of physical possession, and not to the vesting of the legal title in interest. The intention appears to me to have been to vest in interest a one-third share in each child of testatrix at testatrix's death, and merely to postpone the possession of the principal, in the case of the son, until he attains the age of 25 years, and in the case of the daughters (by the provisions especially affecting them) to continue the possession of each of the one-third shares given them in the trustees during such daughters' respective lives. Similar words have in a number of cases been construed as vesting title in remaindermen, although the time of possessory enjoyment was postponed. Paterson v. Ellis' Ex'rs, 11 Wend. 259; Bliven v. Seymour, 88 N. Y. 469; Matter of Charlier, 22 App. Div. 71, 47 N. Y. Supp. 818; Aldrich v. Funk, 48 Hun, 367, 1 N. Y. Supp. 541; Vanderpoel v. Loew, supra.

The remaining questions may be disposed of briefly. The will is made by a woman, born a citizen of the United States, who married an alien. She creates a trust for the benefit of the foreign-born children and the alien husband, who are nonresidents, and appoints nonresident alien trustees of the real property situate in this state. The inquiry is three-fold as to the right of the testatrix to create, of the alien beneficiaries to receive, and of the alien trustees to take and hold. By express statutory provision (section 6, Real Property Law) a woman born a citizen of the United States, who has married an alien, and the foreign-born children of such woman, are, notwithstanding their residence in a foreign country, entitled to take, hold, convey, and devise real property situated within this state as if citizens of the United States, where, as here, the title to such real property has been derived through a citizen of the United States. The right thereby given to devise includes the right to do so upon such trusts as our laws permit. The citizenship of the beneficiary does not appear to be material where the legal title is vested in the trustees. It has been held that, where the trustees are citizens, active trusts for the benefit of aliens, if otherwise lawful, are valid. Marx v. McGlynn, 88 N. Y. 357, 376; Meakings v. Cromwell, 5 N. Y. 136; Wainright v. Low, 132 N. Y. 313, 30 N. E. 747. There is no express regulation of the right of an alien to take and hold as trustee. The reason given, in the cases last cited, for permitting an alien to take the beneficial use, is that the title to the land is still within the control of the state; it being in the hands of citizen trustees, who owe allegiance to our government and can be called upon to discharge the duties of citizenship. But where this control is expressly abandoned,

where our law permits the title to be held by an alien outright, there is no reason why such alien should not hold as trustee. Howard v. Moot, 64 N. Y. 262; Duke of Cumberland v. Graves, 7 N. Y. 305. . In the latter case Ruggles, C. J., said (at page 312):

"There is no objection to the execution of a trust by an alien excepting that which arises from his incapacity to hold lands."

The fact that the beneficiary is also an alien makes no difference. If the property may be held by an alien for his own use, it may be held by him for the use of another alien. The capacity to hold property is the test, and this is equally true where the trust is created by devise. Section 4, Wills. 2 Rev. St. (1st Ed.) pt. 2, p. 57, c. 6, tit. 1, § 4, provides:

"Every devise of any interest in real property, to a person who, at the time of the death of the testator, shall be an alien, not authorized by statute to hold real estate, shall be void."

The trustees in this case, being British subjects, are authorized to take and hold real estate in this state. This right is conferred by section 5a of the real property law (Laws 1897, p. 706, c. 593), under which any citizen of a nation which, by its laws, confers similar privileges on citizens of the United States, may take, acquire, hold, and convey real estate within this state in the same manner and with like effect as if such person were at the time a citizen of the United States. Similar privileges are conferred upon citizens of the United States by an act of Parliament of Great Britain, enacted in 1870 (St. 33 Vict. p. 166, c. 14, § 2), which provides in part:

"Real and personal property of every description may be taken, acquired, held and disposed of by an alien in the same manner in all respects as by a natural born British subject."

See Fay v. Taylor, 31 Misc. Rep. 32, 63 N. Y. Supp. 572.

The guardian for infants Sugden in their answer in the Arnold action alleges that partition is unnecessary, imposes an unnecessary burden and expense upon the parties entitled to proceeds of sale, and is injurious to the interests of infant defendants. The contention is that plaintiff already has power of sale of premises described in the complaint under the will of one Mary Hart, the common source of title. But as Jessie Sugden, deceased, the mother of these infants, derived her share under this Hart will, it is clear that a construction of the Sugden will would also be necessary to determine the proper distribution of the proceeds if a sale were made by plaintiff under his power as executor of the Hart will rather than under a decree in partition. The share of the Sugden infants is collectively only one-tenth part of the parcels described in the complaint in the Arnold action. All other parties acquiesce in the partition. It is not shown that any greater expense is imposed upon the estate by proceeding to partition this property with the other parcels than would be incurred by a separate sale under the power and a proceeding to construe the will upon distribution. The interests of the infants are not prejudiced by the partition. I reach the conclusion that partitions should be decreed, that the interests in the real estate in question have not been converted into personalty, and that the will of Jessie

Sugden creates valid trusts as follows: The trustees are vested with legal title and with power to sell, the proceeds of such sale to be impressed with the same trust. The entire income derived from the whole estate is to be paid by the trustees to the husband during his life or until he shall marry again. Upon his death or remarriage the corpus of the estate is to be divided into three equal shares. The income of each share is to be accumulated separately for the benefit of each child until it becomes of age. The trustees may, however, apply the whole or such parts of the separate respective income or accumulations as they may think fit for the maintenance, education, or benefit of the child in whom the share producing such income or accumulation is vested. In the case of. the son, the accumulation derived from his one-third share is to be paid him when he becomes of age, and the income derived from such share is thereafter to be paid to him until he attains the age of 25 years or marries, when he is to receive his one-third share of the principal. The income of the daughters' separate third shares are to be separately accumulated for them severally and paid over to them when they attain majority, after which the income derived from their separate shares are to be paid to them severally for life. Each of the three children takes a vested remainder in one-third of the property. The powers given the trustees are valid. They may make advances to each child from its share of the principal to the amount of one-half such share. They may pay to each child upon his or her marriage a sum not exceeding £1,000, such payments to. be made out of the principal of the estate.

Partition will be decreed accordingly.