WILLIAM SCHOLLE, Respondent, *v.* JACOB SCHOLLE, J. ROMAINE BROWN, Purchaser, Appellant.

In proceedings to compel a purchaser at a partition sale to complete his purchase, it appeared that R. formerly owned an undivided seven-tenths of the land in question; he conveyed two-tenths, and thereafter executed a deed which purported to convey his remaining interest, and under this deed the parties claimed title to one-half. It appeared, however, that the intent was to convey but two-tenths. *Held*, that, as the deed was liable to be reformed as against all the parties, it was to be assumed that the reformation might occur, and, therefore, in this respect the title was defective.

The will of R., after giving certain specific legacies, gave to his executors his residuary estate in trust, with power to receive the rents and profits, sell and convey the property, invest both the rents and profits and proceeds of sale " and to divide and apply the same and income thereof " as directed, *i. e.*, to apply the income of two-sixths of " said residue and remainder " to the use of his wife for life, with remainder over to his children, and to apply the income of one-sixth to each of his four children during life, with remainder over to the issue of such child, and with authority to advance to each child a specified sum out of the principal if the executors should deem best. In the gift of the legacies the testator used the words " give and bequeath," in those of the residuary estate the words used were " devise and bequeath." *Held*, that the final and ultimate division did not require a conversion of the land into money, nor was such a conversion required as respects the intermediate income; that, therefore, the remaindermen took a vested interest in the lands; and that the interests of the grandchildren were not cut off by a foreclosure suit, to which they were not made parties.

Where only a power of sale is given to executors by a will, without explicit and imperative direction for its exercise, and the intention of the testator can be carried out although no conversion is adjudged, the land will pass as such and not be changed into personalty. In the absence of an express direction to sell one may not be implied unless the design

and purpose of the testator is unequivocal and the implication so strong as to leave no substantial doubt; and so, unless the exercise of the power is rendered necessary and essential by the scope of the will, the authority is simply discretionary and does not work a conversion.

When the mortgage which was foreclosed was assigned to S., the plaintiff in the foreclosure suit, R. guaranteed the payment of one-half thereof. After R.'s death S. presented a claim to his executrix, who alone qualified and acted, for one-half, which was disputed. S. then began the foreclosure; the executrix was made a defendant and answered. Pursuant to an arrangement between her and S. she withdrew her answer and executed a deed to S. of R.'s entire interest. S. in return withdrew his claim against the estate and on the foreclosure sale bid in the property for the full amount of the mortgage. *Held,* that the deed was not a good execution of the power of sale and was invalid, as there was no sale such as the will contemplated, but an appropriation of the land to pay a debt, chargeable primarily upon the personal property, without an order of the surrogate, or proof that the personalty was insufficient to pay debts; also, that the surrogate was powerless to appropriate the land to the payment of debts except in the statutory method.

Accordingly *held,* that the title proffered was defective and the purchaser was not bound to complete his purchase.

Reported below, 23 J. & S. 474.

(Argued March 19, 1889; decided April 16, 1889.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made January 14, 1889, which affirmed an order of Special Term releasing J. Romaine Brown, as assignee of B. P. Fairchild, purchaser, from his purchase at a sale pursuant to judgment in this action.

This was an action of partition.

An interlocutory judgment of partition and sale was entered in May, 1885. As to the premises now in question, the sale took place in December, 1886, under a supplemental decree of this court. Mr. Fairchild became the purchaser of the premises in question and paid ten per cent of the purchase-money; he assigned his bids to J. Romaine Brown, whereupon it was stipulated that Brown should be bound by the printed terms of sale.

Subsequently Mr. Brown, through his attorney, served upon the referee a notice declining to accept the title and stating several objections to its validity, which may be summarized as follows:

1. That the deed from William H. Raynor and wife to Lewis J. Phillips, dated November 30, 1872, and recorded January 13, 1875, in Liber 1317 of Conveyances, page 102, is void for uncertainty by reason of its omission to specify the amount of interest conveyed, and that if it should be held to convey the whole of Raynor's interest, it was liable to be reformed at the instance of the grandchildren of said Raynor, as, while he owned an undivided five-tenths, the intent was to convey only two-tenths.

2. That the descendants of William H. Raynor, that is to say, his grandchildren, were not made parties to the foreclosure suit brought by Abraham Scholle, as plaintiff, against Benjamin A. Willis and others, as defendants.

3. That the executors of William H. Raynor's will, viz., William R. Stewart, John H. Morris and Jonathan Edgar, were not made parties to such foreclosure suit.

4. That the deed executed by Sarah E. Cornish (formerly Sarah E. Raynor), individually, and as sole acting executrix of and trustee under the will of William H. Raynor, deceased, as party of the first part, to Abraham Scholle, William Scholle and Jacob Scholle, parties of the second part, dated November 21, 1878, was void or voidable for want of consideration, and the further reason that there were creditors of William H. Raynor who might show themselves entitled to have it set aside.

The lots in question are claimed by the plaintiff to have been part of a large tract of land north of One Hundred and Twenty-fifth street, in the city of New York, owned and possessed by Charles Henry Hall from about the year 1825 to the time of his death in the year 1852. From the year last mentioned until the year 1872 nothing seems to have been done with the property. In 1872 Benjamin A. Willis formed a syndicate to buy it, and did acquire title to it from the parties having an interest in it. In substance, the arrangement was, that Abraham Scholle should advance $58,500 ; that Willis should purchase the property and thereupon should transfer to William H. Raynor an equal undivided seven-tenths of the

property, and that out of these William H. Raynor should convey to Abraham Scholle two-tenths, and to Lewis J. Phillips two-tenths. To secure the amount to be advanced by Abraham Scholle it was further agreed that Willis should execute and deliver to Phillips and Raynor a bond and mortgage securing the payment of $58,500, and that said bond and mortgage should be assigned by Phillips and Raynor to Scholle.

The arrangement was carried out, and, in pursuance of it, the conveyances and the mortgage and the assignment thereof were made, except that William H. Raynor, instead of conveying to Lewis J. Phillips two-tenths, in terms, executed and delivered to the latter the deed to which the first objection above specified is made. The deed purported to convey *all* the undivided tenth parts which had been conveyed to Raynor by Willis, and described them as *seven* undivided tenth parts. In point of fact, Raynor, after having conveyed two-tenths to Abraham Scholle, had only five-tenths left which he could convey.

In 1873 Lewis J. Phillips mortgaged his interest in two-tenths to John D. Phillips. That mortgage was foreclosed, and the title for the interest covered by it transferred to Benjamin A. Willis by referee's deed. Abraham Scholle foreclosed the mortgage transferred to him by Phillips and Raynor, and the title to the property bound by that action became vested in Jacob Scholle by referee's deed dated April 1, 1880.

William H. Raynor died in 1874, leaving a will by which he appointed Sarah E., his wife, as executrix, and three other persons as executors. Of these Sarah E. alone qualified as executrix. The will, after providing for the payment of debts and funeral expenses, and after various specific legacies, contained the following clauses:

"*Fifthly.* I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, unto my executrix and executors hereinafter named, and the survivors and survivor of them in trust, with power to receive the rents and profits of the same and to sell, dispose of and convey the same at such time or times, and in such manner as to them shall

seem proper and best for the interest of my estate, and to invest and keep invested such rents and profits and the pro-ceeds of such sale or sales  \*  \*  \*  and to divide and apply the same and the income thereof as hereinafter directed.

"*Sixthly.* I give and bequeath and I hereby authorize and direct my said executrix and executors to apply the income of two-sixths part of said residue and remainder of my estate semi-annually to the use of my said wife Sarah E., for and during the term of her natural life, and after her death I give, devise and bequeath the said two-sixths parts of said residue and remainder of my estate unto my children living at the time of her decease, and unto the lawful issue of any deceased child or children to be divided equally, share and share alike, *per stirpes* and not *per capita*, among such children and issue, the issue of any deceased child to have the share the parent would have been entitled to if living.

"*Seventhly.* I give and bequeath and I hereby authorize and direct my executrix and executors to apply the income of one-sixth part of said residue and remainder of my estate semi-annually to the use of my said son William H., for and during the term of his natural life, and after his death I give, devise and bequeath the said one-sixth part of said residue and remainder of my estate, or so much thereof as may remain unto the children of my said son living at the time of his decease, and to the lawful issue of any deceased child or children of my said son, to be divided equally, share and share alike, *per stirpes* and not *per capita*, among such children and issue, the issue of any deceased child to have the share the parent would have been entitled to if living. And I authorize my executrix and executors, in their absolute discretion, to advance and pay over to my said son the sum of twenty-five thousand dollars, or any less sum of the principal of said one-sixth part of the said residue and remainder of my estate when or at any time after my said son shall attain the age of twenty-five years, if they shall deem it best so to do."

By the three following clauses a similiar provision was made

for each of the three other children of the testator, save as to the amount authorized to be advanced.

The eleventh clause was as follows :

"*Eleventhly*. If either of my said children shall die without leaving lawful issue surviving, then the portion of my estate which would have belonged to such issue I give, devise and bequeath unto my surviving children and unto the lawful issue of any deceased child or children, to be divided equally, share and share alike, *per stirpes* and not *per capita*, among such children and issue, the issue of any deceased child to have the share the parent would have been entitled to if living."

On or about October 9, 1876, Sarah E. Raynor, as sole acting executrix of and trustee under the will of William H. Raynor, deceased, presented to the Surrogate's Court a petition for an accounting, and from the schedules filed by her in connection therewith it appeared that Abraham Scholle had presented a claim on his part against Raynor's estate for $28,948.18, with interest from November 1, 1875. This claim was classified by the executrix among the uncertain and disputed claims. In point of fact, it was based, although the schedule did not show it, upon the written guarantee of Raynor that fifty per cent of the principal and interest of the bond and mortgage for $58,500 should be paid, and that he would also pay one-half of the taxes and assessments. On or about February 8, 1877, Abraham Scholle commenced his action to foreclose the $58,500 mortgage. In the meantime Sarah E. Raynor had married again, and her name then was Sarah E. Cornish. As such she interposed an answer to the complaint. Thereupon an agreement was made between Scholle and Mrs. Cornish that the former should withdraw his claim against the estate of Raynor and allow the estate to be settled up, and that in consideration therefor Mrs. Cornish should withdraw her answer and relinquish all interest she had in the mortgaged premises, individually and as executrix of and trustee under the will of Raynor. The agreement was carried out, and in pursuance thereof Mrs. Cornish executed

and delivered to Abraham Scholle, William Scholle and Jacob Scholle the deed dated November 21, 1878. By that deed she conveyed the mortgaged premises and all the estate, right, title, interest, claim and demand whatsoever, both in law and equity, which William H. Raynor had in them in his lifetime and at the time of his decease and which she had in them by virtue of his will and testament or otherwise. Thereafter, on or about December 28, 1881, Mrs. Cornish presented to the surrogate a petition for a final accounting, and the accounts and schedules filed in connection therewith showed that the claim of Scholle had been settled.

Mrs. Raynor was made a party defendant to this execution. The executors named in Mr. Raynor's will were not made parties, nor were his grandchildren, some fourteen in number.

*Alexander B. Johnson* for appellant. A conversion being necessary to accomplish the general scheme of the testator, the power of sale operates as such and takes effect as of the date of the testator's death. (*Lent* v. *Howard*, 89 N. Y. 169–177; *Delafield* v. *Barlow*, 107 id. 535; *Phelps, Exr.*, v. *Pond*, 23 id. 69; *Stagg* v. *Jackson*, 1 id. 206; *Hood* v. *Hood*, 85 id. 570; *Fisher* v. *Banta*, 66 id. 468; *Morse* v. *Morse*, 85 id. 53; *Lockman* v. *Reilly*, 95 id. 167.) If a person named in a will as executor, to whom there is a devise in trust, is *nolens volens* vested with an estate, that interest is cut off by the renunciation of the trust or death of the individual. A formal deed of disclaimer is not necessary. (*Burritt* v. *Silliman*, 13 N. Y. 93; 2 R. S. [Edm. 2d ed.] tit. 4, pt. 2, chap. 6, p. 113, § 55; *Leggett* v. *Hunter*, 19 N. Y. 445; *Taylor* v. *Morris*, 1 id. 343; *Mott* v. *Ackerman*, 92 id. 539, 553.) The burden of proof is upon the objector to show that there was sufficient personalty to pay the debts. (*Mosher* v. *Cochrane*, 107 N. Y. 35; *Ferguson* v. *Crawford*, 70 id. 253.) The decree in the Surrogate's Court was final and conclusive as to all matters litigated and decided therein, or which might have been litigated in such proceeding. (Code, § 2743; *Clemens* v. *Clemens*, 37 N. Y. 59; *Embury* v. *Connor*, 3 id. 511–533; *Yates* v. *Preston*,

41 id. 113; *Leavitt* v. *Wolcott,* 95 id. 212; *In re Tilden,* 98 id. 434; *In re Hawley,* 100 id. 206.) The recitals in the decree that all the infants were represented by guardians and that all the creditors were cited to appear is *prima facie* proof of those facts. (*Ferguson* v. *Crawford,* 70 N. Y. 253; *Dickerson* v. *Mayor, etc.,* 5 id. 434.) A surrogate's jurisdiction cannot be questioned collaterally. (*Martin* v. *Dry Dock Co.,* 92 N. Y. 70, 76.) An executor is authorized by law to compromise claims of the estate, and they have such power under the common law. (*Choteau* v. *Suydam,* 21 N. Y. 179, 184.)

*Thomas Hooker* and *J. Bleecker Miller* for respondent. The deed from Raynor to Phillips is, in fact, at the present time, and ever since it delivery, has been liable to reformation on the ground of mutual mistake. (*Moses* v. *Murgatroyd,* 1 Johns. Ch. 127.) The foreclosure of the $58,500 mortgage did not bar or conclude the infant devisees of Raynor. The deed from Sarah E. Cornish, as executrix of Raynor, to Scholle, was not within the terms or spirit of the power of sale contained in Raynor's will, which gives power only "to sell, dispose of and convey," and "to invest and keep invested the proceeds of such sale or sales" and "to divide and apply the same" among various devisees. (*Hetzel* v. *Barber,* 69 N. Y. 13; *McPherson* v. *Smith,* 49 Hun, 254, 258; *Kinnier* v. *Rogers,* 42 N. Y. 531; *Gerard* on Titles [3d ed.] 448; *Delafield* v. *Brower,* 107 N. Y. 540; *Lockman* v. *Reilly,* 95 id. 64.) The direction in an earlier clause of the will to pay debts does not affect the question, as the creditors would have the priority even if no such direction had been inserted in the will. (*In re City of Rochester,* 110 N. Y. 164; *Hoyt* v. *Hoyt,* 17 Hun, 197.) Admitting that there is some implied power therein to sell in order to pay debts, yet that would not authorize a transfer to a creditor for no other real consideration than a release from his claim. (*Russell* v. *Russell,* 36 N. Y. 583, 584; *Goode* v. *Comfort,* 39 Mo. 313; *Hoyt* v. *Hoyt,* 17 Hun, 197; *McPherson* v. *Smith,* 49 id. 257; *In re Brewster,* N. Y. D. Reg., Dec. 17, 1888; *Hoyt* v. *Bennett,* 50 N. Y. 545, 546; Code of

Civil Pro. § 2745 ; *Livingston* v. *Newkirk*, 3 Johns. Ch. 319 ;
*Williams* v. *Eaton*, 3 Redf. 503 ; *Kinnier* v. *Rogers*, 42
N. Y. 534.) A sale or transfer by the trustee in order to pay
or settle a claim against the estate would be void in any case,
because in contravention of the trust. (*Briggs* v. *Davis*, 20
N. Y. 15.) The transfer by Raynor's executrix was not
ratified or confirmed by the references thereto or attempt to
include the same in said executrix's account, nor by the decree
on such accounting in the Surrogate's Court. (*Roderigas* v. *E.
R. Sav. Inst.*, 76 N. Y. 320; *In re Kellogg*, 39 Hun, 275 ; *Rich-
ardson* v. *Root*, 19 id. 473 ; Code of Civil Pro. §§ 2743, 2745 ;
*Cooper* v. *Felter*, 6 Lans. 485 ; *Tucker* v. *Tucker*, 4 Keyes, 149 ;
*Dye* v. *Karr*, 15 Barb. 444 ; *In re Kendrick*, 107 N. Y. 105,
111 ; *Bryan* v. *Cooper*, 72 id. 327 ; *Hopkins* v. *Van Volken-
berg*, 16 Hun, 5 ; *Leveness* v. *Cassebeer*, 3 Redf. Sur. Rep.
492 ; *Scheu* v. *Lehning*, 31 Hun, 183.) The questions arising
herein are too serious to be entailed upon a purchaser, and
courts are not in the habit of passing upon them in the absence
of other parties interested. (*Jordan* v. *Poillon*, 77 N. Y.
521 ; *Fleming* v. *Burnham*, 100 id. 1 ; *McPherson* v. *Smith*,
49 Hun, 257.) The purchaser should not be held and com-
pelled to wait until new parties can be brought in for the
purpose of deciding these questions, but should be relieved
from his purchase and reimbursed his deposit and expenses of
examining title. (*Toole* v. *Toole*, N. Y. Daily Reg., Feb.
13, 1889.)

Finch, J. Very convincing proof is furnished in this case
that Raynor, at his death, owned an undivided three-tenths of
the land in controversy notwithstanding his deed to Phillips,
which, on its face, purported to convey his entire interest.
That deed is liable to be reformed as against all the parties
before us, and in judging the title proffered to the purchaser
we must assume, in the interest of his safety, that such
reformation may occur ; and proceed to the inquiry whether
that undivided three-tenths passed under his will to the
grandchildren in remainder, or was taken from them and

their interest extinguished by the sale on foreclosure, or the deed given by the executrix.

The grandchildren were not made parties to the foreclosure ·of the mortgage given to Scholle; but the executrix, who alone qualified and entered upon the execution of the will, was made a party defendant. It is now claimed in behalf ·of the title tendered, that by the terms of Raynor's will there was an equitable conversion of the real estate into personal, .and that the grandchildren took no interest in the land, but ·only legacies in money coming to them through the exe-·cutrix, and so her presence as a party was alone needed to make the judgment of foreclosure pass a clear title to the land when executed by a sale.

There is in the will no imperative direction for the sale of ·the real estate. Indeed, there is no direction to sell at all. A power or authority to sell is given, but unless the exercise ·of that power is rendered necessary and essential by the scope of the will and its declared purposes, the authority is to be deemed discretionary, to be exercised or not, as the judgment of the executrix may dictate, and so an equitable ·conversion will not be decreed. (*White* v. *Howard*, 46 N. Y. 162.) To justify such a conversion there must be a positive ·direction to convert, which, though not expressed, may be :implied; but, in the latter case, only when the design and ·purpose of the testator is unequivocal and the implication so .strong as to leave no substantial doubt. (*Hobson* v. *Hale*, 95 N. Y. 598.) Where, however, only a power of sale is .given without explicit and imperative direction for its exer-cise, and the intention of the testator in the disposition of his ·estate can be carried out, although no conversion is adjudged, the land will pass as such and not be changed into personalty. ·(*Chamberlain* v. *Taylor*, 105 N. Y. 194.)

We are, therefore, required to consider the terms of the will .and the purposes which they indicate. The testator, after a formal direction for the payment of debts and funeral expenses, ·gives certain specific articles to his wife and to his children; .and then, in the fifth clause of his will, gives, devises and

bequeaths to his executors all the rest, residue and remainder of his estate in trust, with power, first, to receive the rents and profits; second, to sell and convey the property; third, to invest both rents and profits and proceeds of sales; and, fourth, "to divide and apply the same and the income thereof" as directed. By the words "the same," as used in the last clause, the testator obviously means the entire residue given in trust, for the same words were used in a preceding clause where they could have no other interpretation, and the division referred to, as shown by its carefully expressed terms, was of the whole estate, and not merely of some portion invested. The testator then directs his executors to apply the income of two-sixths of the residue and remainder to the use of his wife for life, and, upon her death, bequeaths and devises such two-sixths to his children then living, and the issue of those deceased. Then follow four clauses identical in construction and language, by which, as to each of his four children, he gives and bequeaths and directs his executors to apply one-sixth of the residue to such child for life, with remainder over to the issue of such child then living, or the children of such issue, if deceased. A final provision respects the death of a child without issue and carries that over to the survivors and the issue of those deceased. There is thus contemplated beyond the life estate of the widow an equal division of the whole residue among the children for life, with a remainder over to the grandchildren. The final and ultimate division in no sense or respect requires or compels a conversion of the land into money, and each devise and bequest is of an aliquot part of the residue, and not of the proceeds of such residue when turned into money. A conversion would, perhaps, be convenient as an aid to the ultimate distribution, but is not rendered necessary or essential to the final division. Nor, as it respects the intermediate income, is any such conversion requisite. The executors are to receive the rents and profits, and are authorized to invest the same, together with any proceeds of sales which, in the exercise of their discretion, they may have made, but the income of the whole residue is given, and not merely of the invested funds; and

while the executors are apparently empowered to turn rents and profits into capital by investing the same, they are not required to do so by any implied direction, and if they were, it would only indicate the testator's expectation that land, as the origin of rents and profits, would remain in the hands of the executors until, by possibility, the date of final division. It is observable that the language of the testator is very carefully employed to rebut the theory of a conversion. In each of five articles, when giving income merely, he uses the phrase "I give and bequeath," appropriate to a mere gift of personal property, but when he creates the remainders, the language changes uniformly and in every instance and becomes "I give, *devise* and bequeath." The change of phraseology seems not to be accidental, but intentional, and to indicate the testator's expectation that land, as such, would pass in the remainders, and their gift require the added word "devise."

Our attention is drawn to an adverse conclusion of the Supreme Court in another case not reported involving, by way of specific performance, the same title here in question. (*Mut. Life Ins. Co.* v. *Wood*, 51 Hun, 640.) We have given the opinion in that case a careful consideration. Its argument for a conversion is founded upon the idea that rents and profits are never to be divided *as such*, but to pass as capital into a fund the income of which is to be divided, and then the fund itself. If we concede that the power given to invest rents and profits makes such investment in all cases obligatory, which is a point open to question, it does not follow that the land was not given, subject to an appropriation during lives of the rents and profits, to a fund the income of which was otherwise appropriated. I am inclined to think, however, that the investment of rents and profits referred to by the testator had relation only to such parcels or portions of the land as the executors, in the exercise of their discretion, might see fit to sell, for in the ultimate division the testator gives, not aliquot parts of the invested funds or proceeds of sales, but of the very rest, residue and remainder which he gave to his executors in trust, and by a form of language alone appropriate to the transfer of land as

land. We are unable to discover in the scope or plan of the testamentary disposition any such necessity for an equitable conversion as would justify an implication of a positive direction.

In the situation of the estate of Raynor, as it stood when his will was executed, there was much to occasion and explain a discretionary power of sale in his executors but nothing to justify an imperative command. The bulk of his property consisted of real estate which he and his associates had purchased in the upper part of New York, and extending from One Hundred and Thirty-eighth to One Hundred and Forty-second streets, in numerous lots. The purchase was doubtless made by the testator and his associates with an expectation of large increase of values as the growth of the city extended. Raynor's property was heavily mortgaged and he must have looked to great profits in his enterprise and contemplated a growth of value in the future which would not only pay off the incumbrances, but furnish a basis for the large advances which he authorized his executors to make to his children. But the future was uncertain. The expected increase might come swiftly or be very slow in its approach. And so he made the advances rest in the *absolute* discretion of his executors. They were not to be compelled to sell for the purpose of making them, and were to be governed in their action by what appeared to be for the best interest of the estate and its beneficiaries. To command a sale might be to compel a sacrifice, but a discretionary power met the exigencies of the situation, and such was explicitly given. We ought not to broaden and strengthen it by a needless implication into an imperative command.

But the appellants claim that Raynor's three-tenths, if not cut off by the foreclosure, passed from the *remaindermen* by force of the deed of the executrix to Scholle as a due execution of the power of sale. The facts disclosed were as follows: When the mortgage for $58,500 was assigned to Scholle, Raynor guaranteed its payment to the extent of

fifty per cent. After Raynor's death, Scholle presented a claim to his executrix for one-half of the mortgage and interest, which the executrix disputed. Thereafter Scholle began his action of foreclosure in which the executrix appeared and answered. The result was an arrangement by which the executrix withdrew her answer and executed a deed to Scholle of the entire Raynor interest, and he in return withdrew his claim against the estate or for any deficiency, and on the sale bid in the property for the full amount of the mortgage and interest. The substance of the transaction was a release of the guaranty in consideration of the conveyance to Scholle of Raynor's whole interest. In her settlement before the surrogate Scholle's claim appears first as not admitted, and afterward as settled by the deed of the executrix.

The power of sale given by the will was to sell at times or in a manner which the executors should deem for the best interests of the estate. The authority contemplated first a sale, and second the exercise of a judgment as to the best interest of the estate. Here there was, in truth, no sale such as the will contemplated. That was one for the purpose of realizing proceeds to be invested as the source of income and interest, and at a time when such values could be realized as would justify a sale instead of further delay for an appreciation of value. Nothing of that kind took place. No proceeds were realized. The land was appropriated to pay a debt chargeable primarily upon the personal property without an order of the surrogate or proof that the personal assets were insufficient to pay the debts. The authority to sell was given for one distinct and definite purpose, and not at all to enable a disputed debt to be compromised. The deed, therefore, passed no interest of the remaindermen, and the surrogate was powerless to take it away and appropriate it to the payment of debts except in the statutory method. (*Allen* v. *De Witt*, 3 N. Y. 276; *Briggs* v. *Davis*, 20 id. 15; *Roome* v. *Philips*, 27 id. 357; *Russell* v. *Russell*, 36 id. 581.) Whatever may have been the effect of the deed as against the interest of Mrs.

Raynor, it was not a good execution of the power of sale as against the grandchildren, and did not divest them of their estate.

It follows that the title proffered was defective, and the purchaser was properly discharged. The questions involved were pure questions of law, unaffected by any possible change of the facts out of which they sprang, so far as the will and the deed of the executrix are concerned, and are not so doubtful or so evenly poised as to justify an omission to decide them.

The order appealed from should be affirmed, with costs.

All concur.

Order affirmed.