Surrogate's Court, New York County, February, 1913. [Vol. 79.

any rule of law, it has the advantage of being pregnant with the oil of equity.

In dealing with the affairs of a family, one ounce of equity is worth a ton of dynamite.

Decreed accordingly.

---

Matter of the Appraisement Under the Transfer Tax Act of the Property of CATHERINE E. DALY, Deceased.

(Surrogate's Court, New York County, February, 1913.)

Taxes — transfer tax — wills — exemption from payment of transfer tax — Laws 1912, ch. 206.

A bequest to the American Society for the Prevention of Cruelty to Animals, under the will of a decedent who died in 1911, is subject to a transfer tax.*

APPEAL by the state comptroller from an order assessing the transfer tax.

Thomas E. Rush, for State Comptroller.

J. Mayhew Wainwright, for Ameican Society for the Prevention of Cruelty to Animals.

COHALAN, S. The state comptroller appeals from the order assessing a tax upon the decedent's estate and alleges that the appraiser erred in exempting from taxation a bequest of money to the American Society for the Prevention of Cruelty to Animals. Decedent died on the 17th of April, 1911. The Tax Law in force at that time provided that a bequest to an educational, charitable or benevolent corporation was exempt from the provisions of the act. It also provided that a bequest of personal property other than

---

* See Laws of 1912, chap. 206, which exempts societies for the protection of children or animals from the payment of a transfer tax on bequests to them.— [REPR.

money or securities to a society organized " for the enforce-
ment of laws relating to children or animals" was exempt
from taxation.    The state comptroller contends that the
American Society for the Prevention of Cruelty to Animals
is a corporation organized exclusively for the purpose indi-
cated by its title, while the learned counsel for the society
contends that it is an educational, charitable and benevolent
corporation.    The act of incorporation of the society, as well
as the by-laws passed pursuant thereto, shows that the society
was formed to " enforce all laws which are now or may
hereafter be enacted for the protection of dumb animals,
and to secure by lawful means the arrest, conviction and
punishment of all persons violating such laws; to provide
effective means for the prevention of cruelty to animals
throughout the United States, and to instruct the people to
be kind to animals by the dissemination of humane litera-
ture and other effective methods."    Its so-called educational
work seems to be confined to the enforcement of laws
enacted for the prevention of cruelty to animals, and to the
publication of leaflets and tracts that appeal to mankind
for humane treatment of animals.    The enforcement of
special laws can be considered educational only in the
limited sense in which every experience of the individual
may, by increasing his knowledge, be educational.    It is
not educational in the usual meaning of the word.    There
was no proof before the appraiser of the extent to which
leaflets and tracts are disseminated or whether such leaflets
contain any matter of instruction other than an exhortation
to refrain from cruelty to animals.    It would therefore ap-
pear that the work which the society accomplishes cannot
be designated as educational within the meaning of the
term in section 221 of the Tax Law.    The learned counsel
for the society also contends that the society is a benevolent
and charitable corporation.    Under the act of incorporation
it is entitled to receive one-half of all the fines imposed upon
persons convicted of violating the provisions of law relating
to the prevention of cruelty to animals.    The papers before
the court do not show what amount is realized by the society
from this source or whether it is sufficient to meet all the

necessary expenses of the society. But, assuming that the amount received from fines is inconsiderable in comparison with the amount expended by the society, and that the voluntary contributions of the humane and the philanthropic constitute its principal source of income, I am still unable to perceive how the society can properly be designated as benevolent or charitable. It is an elementary rule of statutory construction that the words of a statute are to be given their usual, ordinary meaning. McCluskey v. Cromwell, 11 N. Y. 593; Matter of O'Neil, 91 id. 516. The usual acceptation of the words " benevolent " and " charitable " is limited to those disinterested actions by which human beings confer benefits upon other members of the human family. It does not extend to the considerate and thoughtful treatment of animals by man. The latter may result from a benevolent spirit or charitable disposition, but the word which is ordinarily used to describe the considerate or thoughtful treatment of animals is not benevolent or charitable, but humane. While fully appreciating the valuable services which the society renders and the admirable work which it performs, I am constrained to hold that it is not an educational, charitable or benevolent corporation within the meaning of those terms in section 221 of the transfer tax statute. The remedy for the statutory discrimination against corporations similar to the Society for the Prevention of Cruelty to Animals lies with the Legislature and not with courts. In Matter of Moses, 138 App. Div. 525, the court held that the Brooklyn Society for the Prevention of Cruelty to Children was not entitled to exemption from taxation on a bequest of money or securities. This decision I consider controlling upon the matter under consideration. The order fixing tax will be reversed and the appraiser's report remitted to him for the purpose of including in the taxable assets of decedent's estate the bequest to the American Society for the Prevention of Cruelty to Animals.

Order reversed and appraiser's report remitted.