Matter of the Judicial Settlement of the Account of Title Guarantee and Trust Company, as Executor of the Last Will and Testament of HAZELDINE HAMILTON, Deceased.

(Surrogate's Court, Kings County, May, 1917.)

Wills — provisions of — annuities — accounting — executors and administrators — corporations — Decedent Estate Law, § 17.

At the death of a testator who died in October, 1915, leaving no descendant, parent, brother or sister, nephew or niece, his estate amounted to nearly $50,000 personalty and over $10,000 realty and his only debt was $106. His will provided for an annuity of $500 to his wife, in lieu of dower, general legacies to four benevolent and charitable institutions, within the meaning of section 17 of the Decedent Estate Law, and a gift of the residue of the estate to the same corporations in equal shares. The executors paid to testator's wife four sums, amounting in all to $500, for which she gave receipts, acknowledging in each instance that the sum so paid was received in payment of

Misc.]    Surrogate's Court, Kings County, May, 1917.

the annuity under the will. Upon the judicial settlement of the account of the executors under testator's will, to which the executrix of his wife was a party, *held,* that one-half of the personal estate of testator, less the debt, belonged to the corporate legatees, together with an undivided one-half of the lands to be held by them in equal shares; that the remaining one-half of the personalty should be awarded to the executrix of testator's widow, and that the heirs at law of testator must be recognized as owners in common of an undivided one-half of the land to be held by them according to the Statute of Descent.

JUDICIAL settlement of account of executor.

George D. Bergener, for executor.

John F. Carew, for petitioner, Catherine L. O'Connell, as executrix of the last will and testament of Mary Frances Hamilton.

Miller, King, Lane & Trafford (Wolcott G. Lane and Chas. A. Sawyer, of counsel), for St. Luke's Hospital.

J. Mayhew Wainwright, for The American Society for the Prevention of Cruelty to Animals.

Egburt E. Woodbury, Attorney-General, for the state of New York.

Wolf & Kohn (Charles L. Grad, of counsel), for Home for Aged and Infirm Hebrews.

Winthrop & Stimson, for Lincoln Hospital and Home.

Francis A. Crowe, special guardian, for unknown heirs.

KETCHAM, S. The will under which this accounting is made contains a provision for an annuity to

the testator's wife of $500, general legacies to four corporations, amounting in all to $13,000, and a gift of the residue to the same corporations equally. It is therein declared that the provision for the annuity to the wife is in lieu of dower, and that if any beneficiary under the will shall contest the will or litigate in opposition thereto such beneficiary shall forfeit the provision made for him thereby. The estate at death consisted of $46,132.02 personalty, and, according to the uncontradicted statement of the account, $12,000 realty. The only debt of the decedent at death was $106. The decedent, when he made the will, had a wife who survived him. He died on October 4, 1915. She died on November 15, 1916, and her executrix is a party to this proceeding. The executor out of the present estate paid to the wife four sums, amounting in all to $500, for which she gave receipts, acknowledging in each instance that the sum so paid was received "in payment of annuity under second clause of the will of Hazeldine Hamilton, deceased." The decedent left no descendant, parent, brother or sister, nephew or niece, and it cannot be questioned that under the Statute of Distributions the widow was at his death entitled to the surplus of his personal property so far as the same · not disposed of by will. Question arises as to the application of section 17 of the Decedent Estate Law, which, in material parts, is as follows: "No person having a * * * wife * * * shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable * * * corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more." Objections to the right of the wife's representative are disregarded. The section quoted is not an act for the benefit of the

relatives therein mentioned. If by its provisions a testator has attempted gifts to corporate legatees, which must be cut down, the excess belongs to the legatees, next of kin or heirs at law in such manner and portion as if the statute were made part of the will. Hence, if section 17 controls this case the widow was entitled, at the death of her husband, to all the unbequeathed personalty rescued from the gifts to the corporations. Her acceptance of the annuity given by the will is not inconsistent with the maintenance of other rights secured to her either by the will or the statute, and in availing herself of the annuity she waived her dower, but nothing else. There is no value in the suggestion that she must restore that which she has received before she can have any other benefit from the estate. It is insisted that by her prosecution of her claim to a part of the estate under the statute she has brought down upon herself the forfeiture denounced by the will upon any beneficiary who shall contest the will or litigate in opposition to it. The answers to this argument are many, but it will be enough to invoke against it the rule that conditions of forfeiture such as are found in this will are void as to the personal estate in the absence of a gift over. *Matter of Arrowsmith,* 162 App. Div. 623; affd., 213 N. Y. 704; *Matter of Wall,* 76 Misc. Rep. 106; *Matter of Farmer.* 99 Misc. Rep. 437. The four corporate legatees are benevolent and charitable institutions within the purview of this section. Of them the American Society for the Prevention of Cruelty to Animals is the only one as to which doubt is expressed. This society was called into being by chapter 469 of the Laws of 1866, entitled " An Act to incorporate the American Society for the Prevention of Cruelty to Animals." This act contained no definition of the objects of the society, and its character, for the pres-

ent discussion, must be determined by its works. Since its organization its activities, as shown upon the trial, have by every legal standard been such as constitute and reveal a charitable use, and they have marked it as a charitable corporation. Enterprises substantially similar have by almost uniform authority in England and this country been found to be charitable. *Estate of Coleman*, 167 Cal. 214; *University of London* v. *Yarrow*, 1 De G. & J. 72; *Matter of Foveaux*, L. R. (2 Ch.) 1895, 501; *Armstrong* v. *Reeves*, L. R. (25 Ir.) 325. See dictum of Lord Lindley in *Matter of Douglass*, 35 Ch. Div. 472. To the contrary there is cited *Matter of Daly*, 79 Misc. Rep. 586, in which the opinion is clearly given that the corporation here involved is not educational, charitable or benevolent within the meaning of these terms in section 221 of the Transfer Tax Statute. This was but a view expressed upon a question of fact, since the character of the society was not impressed upon it by the statute of its incorporation and could only be known from the nature of its acts. Hence, there is no dissent by this court from the wisdom or accuracy of the opinion in *Matter of Daly, supra.* It was doubtless justified by the proofs to which it conformed, but it cannot control the judgment of another court in another case upon facts which compel·a diverse·decision. Indeed, contrary to the state of evidence now under examination, there was in the *Daly* case, as remarked by the learned court therein, no proof of the extent to which leaflets and tracts were disseminated by the society or as to whether such leaflets contained any matter of instruction other than an exhortation to refrain from cruelty to animals. It was by reason of the absence of such proof that the society was there held not to be educational. This defect of proof becomes significant as to whether the institution is charitable, when it is con-

sidered that profuse proof is here given that by its literature the effort is made not only to teach such principles as will make mankind wiser, but to instil in the human heart such impulses as will make mankind better. A continuous and constant endeavor to impress the intellect and to uplift the soul, when addressed to the general community, is within the established definitions of a charitable use. But there was no determination in the case cited as to whether the corporation was either educational, benevolent or charitable. The result there reached was made to depend solely upon the conclusion, adopted from *Matter of Moses,* 138 App. Div. 525, that no exemption from the transfer tax could be asked for by this corporation on the ground that it was either educational, benevolent or charitable; that the only conceivable exemption of which the society could avail itself was contained in the provision of the Tax Law for the benefit of corporations " organized for the enforcement of laws relating to children or animals," and that by the terms of that statute such exemption did not operate upon a transfer of money by bequest. For these reasons the case presents no variation from the current of decisions found in the many cases *supra.* Upon the repeal of section 19, corporations of the type described, though organized under the act of 1848, became subject to the general provisions of section 17, which in its text embraced any corporation of the kind therein described. The court is not impressed by the contention, made in behalf of the widow's estate, that the lands of the decedent vested in the corporations at his death, and that, therefore, in the readjustment required by section 17, these lands must be allotted to them at the valuation of the accountants. If the case concerned nothing but real estate, apparently devised to the institutions, the wife's executors

would be swift to resist the argument that there was a vested devise in accordance with the will. It may be safely said that in a case to which this statute applies there is no devolution of property, either real or personal, except such as may accord with the statute. The conclusion is that the corporate legatees take only one-half of the estate, less the debt, and that the excess belongs to those who would take assets not disposed of by will. This requires that one-half of the personal estate, less the debt, be assured to the corporate legatees, together with an undivided one-half of the lands to be held by them in equal shares; that the remaining one-half of the personalty be awarded to the executrix of the widow and that the heirs at law of the testator be recognized as owners in common of an undivided one-half of the lands to be held by them according to the Statute of Descent. It is properly suggested in one of the briefs that calculations incident to this decision may be made upon the settlement of the decree, which will generally proceed according to the foregoing views.

Decreed accordingly.