In the Matter of the Estate of ELLEN F. SLOAT, Deceased.

Surrogate's Court, Kings County, November 2, 1931.

*Albert D. Schanzer*, for the special guardian.

*Connolly & Frey*, for the petitioner.

*Frank A. Crowe*, for the Chase National Bank of the City of New York, etc., respondent.

*Edward F. Spitz,* Deputy Attorney-General.

*Zabriskie, Sage, Gray & Todd,* for Cathedral Church of St. John the Divine.

*Taylor, Blanc, Capron & Marsh,* for Manhattan Eye, Ear and Throat Hospital.

*William Thorn Simpson,* for Church of Atonement of All Saints Protestant Episcopal Church of Brooklyn.

*Larkin, Rathbone & Perry* [*Henry Egginton* and *T. R. Iserman* of counsel], for Brooklyn Bureau of Charities.

*Cullen & Dykman,* for Brooklyn Society for the Prevention of Cruelty to Children.

*Stephen Callaghan,* for the Church Charity Foundation of Long Island.

*James F. Thornley,* for the rector of the Episcopal Church of the Atonement.

*Shaffer & Pierson,* for Hopewell Society of Brooklyn.

*White & Case,* for St. Philips Protestant Episcopal Church.

WINGATE, S. The questions raised in this proceeding pertain to the manner of devolution of the estate of this testatrix, consequent upon the violation by her will of the inhibitions contained in section 17 of the Decedent Estate Law, as existing prior to the enactment of section 3 of chapter 229 of the Laws of 1929.

Testatrix died on May 9, 1925. Her will was admitted to probate, and letters testamentary issued to her husband, Henry V. Sloat, and Chase National Bank of New York, on March 24, 1926.

As appraised in the transfer tax proceedings, her estate consisted of realty of the value of $41,300, and personalty of $39,794.07. The debts of the decedent amounted to $463.40, leaving a net estate of $80,630.67.

By the terms of her will the decedent made outright bequests to her husband and to two cousins, the value of which aggregated $5,116. She also directed the payment of $1,000 to Greenwood Cemetery Corporation for care of her burial plot. The entire remainder of her estate was given to her executors in trust, to pay the income to her husband for life, and on his death to divide the principal among nine different charities, $18,500 being divisable in varying amounts among seven of them, and any overplus being payable in equal parts to the Cathedral of St. John the Divine and the Brooklyn Church Charity Foundation.

At the time of testatrix's death her husband, the life tenant of the trust, was eighty-five years of age, as a result of which his

life estate, based on annuity table computations, was fixed at $3,726. If this sum be added to the outright bequests hereinbefore noted, it will be seen that the gifts to individuals aggregated $8,842, whereas the gifts to charities totaled $71,788.67.

Since section 17 of the Decedent Estate Law, as then existing, provided that no person leaving a husband or certain other named individuals, living, should devise or bequeath to charity in excess of one-half part of his estate after payment of debts, it is obvious that there was here violation of the statute which, in the ordinary case, would bring into effect the result therein provided, that the bequest to charities shall be valid to the extent of one-half of the estate and no more.

It was contended before the court that the failure of the husband, during his life, to assert the invalidity of the testamentary directions precluded the heirs at law and next of kin of the decedent from maintaining such position subsequent to his death. This contention is by no means novel and has frequently been adversely adjudicated.

It has been uniformly determined since very early times that the question of a violation of section 17 and its forerunners can be raised by any person who would benefit by the application of its terms, irrespective of whether the objector is within the class of persons expressly named in the statute or not. (*Harris* v. *American Bible Society*, 2 Abb. Ct. of App. Dec. 316, 322; *Robb* v. *Washington & Jefferson College*, 185 N. Y. 485, 489; *Amherst College* v. *Ritch*, 151 id. 282, 335; *Decker* v. *Vreeland*, 220 id. 326, 331; *Matter of Hamilton*, 100 Misc. 72, 75; affd., 185 App. Div. 936.) It has further been decided that, in cases where a partial invalidity of the will exists, all heirs at law and next of kin of the decedent who would benefit by an adjudication to that effect receive a direct right by reason of the terms of the statute, as a result of which a waiver by any individual particularly named in the statute affects only the personal rights of such person and in no way deprives any others who would benefit of their right to object. (*Harris* v. *American Bible Society*, supra; *Matter of Hamilton*, supra.)

Even were the rule otherwise, nothing has been demonstrated before this court which in any way amounts to a waiver of the invalidity of the provisions of the will by the husband of the decedent.

It follows, therefore, that the will must be held to violate the terms of the statute, with the result that the testamentary benefactions to the charities are changed into a fixed gift of one-half of the estate, less the debts. (*Matter of Brooklyn Trust Company*, 179 App. Div. 262, 264, 265; *Matter of Seymour*, 239 N. Y. 259, 263; *Matter of Brown*, 135 Misc. 611, 613.)

Since, on primary principles, the debts are payable from the personalty, the tangible result is that the benefactions to the charities as a class are reduced to a fixed sum of one-half of the net personalty of $39,330.67, or $19,665.33, and a gift of one-half of the realty, such latter one-half value, at the time of the decedent's death, being $20,650.

From the former sum the legacy to the Greenwood Cemetery Corporation must first be deducted. (*Matter of Braasch*, 206 App. Div. 96, 101; *Matter of Blasius*, 134 Misc. 753, 755.) As a result the personalty now available for the charities amounts to a principal sum of $18,665.33 from which the seven legacies to the charities in specific amounts, aggregating $18,500, will first be paid. This will leave a balance of personalty of $165.33, plus one-half of the realty, for the residuary charities. (*Matter of Smallman*, 138 Misc. 889, 910, and cases cited; *Matter of Title Guaranty & Trust Co.*, 195 N. Y. 339, 343, 344; *Matter of Ham*, 123 Misc. 889, 893; modfd. on other grounds, 213 App. Div. 487; affd., 242 N. Y. 536.) In addition to these sums, the charitable legatees are entitled, under the determination in *Matter of Seymour* (239 N. Y. 259, 262), to interest on their statutory legacies, this interest being computable at five per cent, and being payable from the portion of the estate passing as on intestacy. (*Matter of Suydam*, 122 Misc. 340, 342; *Matter of Brown*, 135 id. 611, 614.)

A further question is raised respecting the manner of devolution of the remainder of the estate not passing to the charities. In the 5th item of her will the testatrix, after appointment of her executors, gave them " full power and authority to sell and dispose of my real and personal property at such times and upon such terms as to them or the survivor or successor of them shall seem to be for the best interest of my estate."

On controlling authority it is entirely obvious that this power, being merely discretionary, and not mandatory, failed.

This is noted with especial clearness in *Barber v. Terry* (224 N. Y. 334, at p. 338), where the court says in part as follows: " The will contains a bare discretionary authority to sell real estate and no intent appears that the gift to the residuary devisee should be satisfied by a sale of the lands in suit. (*Matthews v. Studley*, 17 App. Div. 303; affirmed on opinion below, 161 N. Y. 633.) The question is, therefore, as to the valid devise of such lands. The power to allot can not by its terms be exercised to defeat such devise. The executors do not receive the real property devised to the Home. At the death of testatrix the title to the lands immediately devolved. It was not left in suspense. The rights of A. M. McGregor Home attached immediately to any interest in

the lands lawfully devised to it and the rights of the heirs at law attached immediately to any interest in such lands not thus lawfully devised.

" ' Where the conversion of real estate into personalty *is an incident to the devise and for the purpose of making it conveniently workable*, then, as to so much of the estate as the devise fails to dispose of, because in violation of law, the conversion also fails.' (*Jones* v. *Kelly*, 170 N. Y. 401, 408.) No distinction can be drawn in this regard between the right to sell and the right to distribute in kind. The power in either case is granted to the executors for their convenience in administering the estate and extends only to that which falls within their province to administer."

To similar effect are the determinations in *Jones* v. *Kelly* (170 N. Y. 401, 409); *Matter of Braasch* (206 App. Div. 96, 100); *Matter of Arnolt* (127 Misc. 579, 585).

Even in the absence of such determinations relating to cases in which the testamentary direction is partially invalid by reason of violation of section 17 of the Decedent Estate Law, it must be apparent that the power of sale contained in the will at bar is not such as to effect an equitable conversion of the realty.

Perhaps the two leading decisions on this general subject are *Scholle* v. *Scholle* (113 N. Y. 261) and *Matter of Tatum* (169 id. 514). In the *Scholle* case the court says (at p. 270): " There is in the will no imperative direction for the sale of the real estate. Indeed, there is no direction to sell at all. A power or authority to sell is given, but unless the exercise of that power is rendered necessary and essential by the scope of the will and its declared purposes, the authority is to be deemed discretionary, to be exercised or not, as the judgment of the executrix may dictate, and so an equitable conversion will not be decreed. (*White* v. *Howard*, 46 N. Y. 162.) To justify such a conversion there must be a positive direction to convert, which, though not expressed, may be implied; but, in the latter case, only when the design and purpose of the testator is unequivocal and the implication so strong as to leave no substantial doubt. (*Hobson* v. *Hale*, 95 N. Y. 598.) Where, however, only a power of sale is given without explicit and imperative direction for its exercise, and the intention of the testator in the disposition of his estate can be carried out, although no conversion is adjudged, the land will pass as such and not be changed into personalty. (*Chamberlain* v. *Taylor*, 105 N. Y. 194.)"

In *Matter of Tatum* the following language appears (at p. 518): " In order that a court shall be justified, in so construing the will of a decedent as to effect a change in the apparent character of his estate, and in treating that as personal property which is real

estate, in regulating its final distribution, the equivalent of such a direction should be found in the general scheme of the will; when the only power given to sell the real estate is discretionary. Unless the purpose of the testator will fail without a conversion, equity will not presume it. There should be an implication of a direction to convert, so unequivocal and so strong as to leave no substantial doubt in the mind. (*Hobson* v. *Hale*, 95 N. Y. 588; *Scholle* v. *Scholle*, 113 id. 261.) Indeed, conversion, to be decreed, must be so necessary, as that, without it, the provisions of the will would be rendered unreasonable and incapable of a just and an effective operation."

To similar effect see *Matter of Seymour* (209 App. Div. 655, 657, 658; affd., as to this point, 239 N. Y. 259, 264); *Matter of Bingham* (127 id. 296, 314); *Thompson* v. *Hart* (58 App. Div. 439, 448; affd., 169 N. Y. 571); *Harris* v. *Achilles* (129 App. Div. 847, 850); *Matter of Gargiulo* (138 Misc. 90, 98).

It follows, therefore, that the one-half of the personalty of the testatrix which does not pass to the charities, less the charges and administration expenses of the estate, and further less interest at five per cent compounded annually on the charitable legacies from' one year from the date of the grant of letters, passes to the next of kin of the testatrix. (*Matter of Jackson*, 138 Misc. 167, 176; *Matter of Meyer*, 140 id. 1; *Matter of Burroughs*, 137 id. 844, 852; *Matter of Berbling*, 134 id. 730, 731; *Matter of Kruger*, 139 id. 907; *Matter of Harned*, 140 id. 151, 153.) One-half of the realty, as noted, also passed to the charities by virtue of the operation of the statute. This gift assumes the nature of a specific devise, upon which the charities receiving the same are entitled to a sum equivalent to one-half of the net income received since the date of death of the testatrix. (*Matter of Suydam*, 122 Misc. 340, 342.) The method of determination of this sum should be by a deduction of the carrying charges for taxes, mortgage interest, etc., from the gross income of the realty, the result being divided by two. The amount so found is the net sum due the residuary charities by reason of the withholding from them of the use of the property for the benefit of the intervening life estate. A lien for this amount will be impressed upon the portion of the real estate which passes to the heirs at law of the testatrix. Since all of the real properties have been sold, the division of the proceeds, which still retain the nature of real estate, is readily possible.

There remains for determination the persons who were the next of kin and heirs at law of the testatrix at the time of her death, and who are, therefore, the distributees of the portions of her personalty and realty respectively, passing upon intestacy due to the partial invalidity of the will.

It has been made to appear to the reasonable satisfaction of the court that at the time of her death the testatrix was survived by her husband, Henry V. Sloat, but that she had no father or mother, brother or sister or issue of a deceased brother or sister then living. Under such circumstances, the sole next of kin of the decedent was her husband. (Dec. Est. Law, § 98, subd. 3.) He died on July 12, 1927, leaving a will which was admitted to probate in this court on September ninth following, under which the Chase National Bank of the City of New York qualified as executor. The personal property of Ellen F. Sloat which passes by reason of her partial intestacy must, therefore, be paid over to such executor.

The painstaking efforts of the executor to determine the heirs at law of the testatrix indicate that there are living at least certain descendants of more or less remote degree of testatrix's putative aunt, Eliza Banks Allsop. Neither their relationship nor distributive rights have been proved with sufficient definiteness to warrant a decree of adjudication on the subject. For this reason the court concurs in the recommendation of the special guardian for unknown heirs that the proceeds of sale of the realty passing on intestacy to the unknown heirs at law of Mrs. Sloat should be paid into the treasury of the State of New York pursuant to the provisions of section 272 of the Surrogate's Court Act.

Proceed accordingly.