JAMES FRASER et al., as Executors, etc., Respondents, *v.* THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE UNITED PRES-BYTERIAN CHURCH OF NORTH AMERICA, Impleaded, etc., Appellants.

Where a will expressly confers power upon the executor to convert real estate into money, and it is evident that the testator contemplated that it must be done for the purpose of carrying the will into effect, and it appears that in no other way can the intent of the testator be effectuated, the realty will be deemed to have been converted into personalty.

McN. died leaving a will disposing of both real and personal estate; the latter was insufficient, at the time the will was executed and at the time of the testator's death, to pay his debts, the expenses of administration and the legacies given. The will gave to his widow the use of the testator's house and lot during life; it gave to the executors a sum to be held in trust for her benefit during her life, and they were authorized to sell the house and lot as soon as convenient, but within three years after the death of the life tenant; it also authorized them to sell his other real estate within three years after his death, and, until such sale, empowered them to take charge of it and its avails, and the balance of his personal property which remained after payment of debts, expenses and legacies, and to divide the residue of his estate between certain beneficiaries, as provided. In an action for a construction of the will, *held*, that a con-version of the realty into personalty being necessary to carry out the testator's purpose, it must be held to have been his intention that such a conversion should take place; and that, therefore, the realty should be considered as personalty to be disposed of in accordance with the terms of the will.

*Scholle* v. *Scholle* (113 N. Y. 261), distinguished.

Reported below, 58 Hun, 30.

(Argued February 27, 1891; decided March 17, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 23, 1890, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

This was an action for the construction of a will.

February 26, 1880, John McNaughton duly executed his last will and testament, the material parts of which are as follows :

"Item first. I give and bequeath to my wife, Margaret McNaughton, my house and lot in the village of Caledonia, and all my household furniture, to have and to hold the same to her for and during her natural lifetime.

"Item second. I give in trust to my executors four thousand dollars to be securely invested, and the interest and income thereof paid to my wife, Margaret, semi-annually year by year during her lifetime. The above legacy and the provisions herein made for her are to be taken and received by her in lieu of all right or claim of dower of any land or real estate of which I may die seized, nevertheless. These bequests revert at the death of my wife and fall back into the general fund of my estate.

"Item third. I do hereby authorize and empower my executors, or a majority of them, as soon as convenient after the death of my wife, to sell and dispose of my real and personal estate of which I may die seized, on such terms as to the said executors or a majority of them shall seem just and proper, within three years after my wife's death.

"Item fourth. I give and bequeath to the following named children of my sister, Jannet McLaren, viz. : To John F. McLaren the sum of three hundred dollars, to be paid within three years from my death without interest.

"To William McLaren the sum of one hundred dollars, to be paid to him within three years from my decease without interest.

"I give to my niece Jane Atchinson the sum of three hundred dollars, to be paid within three years of my decease without interest.

"Item fifth. I give and bequeath to my niece, Margaret Sharp, the sum of three hundred dollars to be paid within three years from my decease without interest.

" Item sixth. I give and bequeath to the following named children of my sister Margery McKensie, viz. : I give to Duncan McKensie the sum of three hundred dollars, to be paid within three years from my death without interest.

" I give to my niece Margery McDougal, three hundred dollars, to be paid within three years of my death without interest. If they all survive at the time of the final distribution of my estate ; but if they do not all survive at the time of such distribution, such surplus, if any, shall be paid equally to the survivors.

" Item seventh. If there is not a vault on the lot where my wife Sybil's body is interred and where I direct my body shall be interred, I hereby require my executors to procure and erect a suitable vault upon said lot, of a capacity to receive two coffins with a raised panel on the cover with a suitable inscription engraved thereon, and all expenses incurred therefor I hereby authorize and direct my executors to pay.

" Item eighth. I hereby authorize and empower my executors or a majority of them, as soon as convenient after my decease, to sell and dispose of my real estate of which I may die seized on such terms as to the executors or a majority of them shall seem just and proper within three years from my death, and until said real estate is sold, I hereby authorize my executors to take charge and supervision over it, and the avails of the said real estate, together with such balance as shall remain of my personal property, after all debts, charges, funeral expenses and legacies are paid off as provided for, together with all expenses and charges of executing this will.

" Item nine. I hereby direct to be divided equally between and paid to the following named societies :

" I do hereby give and bequeath to the American Bible Society, formed in New York in the year 1816, one-fourth part of the residue of my estate, to be applied to the charitable use and purpose of said society.

"Item ten. I do hereby give in trust to the Trustees of the General Assembly of the United Presbyterian Church of North America, the one-fourth part of the residue of my estate, to be appropriated by the said General Assembly to the Foreign Mission Fund of the said church.

"Item eleven. I also give in trust to the said General Assembly the one-fourth of the residue of my estate, to be appropriated by the said General Assembly to the Home Missionary Society Fund of said church.

"Item twelfth. I further give in trust to the said General Assembly the one-fourth part of the residue of my estate, to be appropriated by the said General Assembly to the Educational Fund of said church, and authorize my executors to pay over the same to them, or their treasurer for the time being, to be applied to the charitable use and purpose of said General Assembly.

"And lastly, I do hereby nominate and appoint my friends, James Fraser, Esq., and William H. Walker, both of Caledonia, Livingston County, N. Y., and Daniel Stewart, of Wheatland, Monroe County, to be the executors of this my last Will and Testament, hereby revoking all former Wills by me made."

April 26, 1881, the testator died, leaving him surviving Margaret McNaughton, his widow, and George H. Bristol and Larius F. Bristol, Jr., infant sons of a deceased daughter, his heirs and only heirs at law and next of kin.

The nephews and nieces to whom legacies were bequeathed are living. The testator's personal property was insufficient to pay his debts and the expenses of settling his estate. He died seized of a house and lot in the village of Caledonia (mentioned in the first item of the will), worth about $4,000, and of a farm of 117 acres in the same village, worth about $9,000, but subject to a mortgage of about $2,600. This action was brought by the executors to obtain a construction of the will and to have the rights of the beneficiaries determined. The nephews and nieces to whom legacies are given by the fourth, fifth and sixth divisions of the will answer jointly, admitting the allegations of the complaint. The heirs at law served, through

their guardian *ad litem*, the usual answer of infants submitting their rights and interests to the court. The American Bible Society and the Trustees of the General Assembly of the United Presbyterian Church of North America answered separately. No appeal is taken to this court, except by the Trustees of the General Assembly of the United Presbyterian Church of North America.

*Joseph W. Taylor* for appellant. There was no devise to this defendant. The executors were authorized to sell the real estate and directed to divide the avails of the sale, together with the personal property, and to pay the same to the legatees named. There was, therefore, a conversion of the realty into personalty, and a gift of the converted fund. (1 Schouler on Wills, §§ 489, 571 ; *Roe* v. *Vingut,* 117 N. Y. 204, 212, 218 ; *Chamberlain* v. *Taylor,* 105 id. 185, 191 ; *Parker* v. *Linden,* 44 Hun, 518, 521 ; 113 N. Y. 37 ; *Craig* v. *Leslie,* 3 Wheat. 563 ; Lewin on Trusts [8th ed.], 950 ; *Taylor* v. *Mitchell,* 57 Penn. St. 209 ; 3 R. S. [7th ed.] 2191, § 96 ; *Dodge* v. *Pond,* 23 N. Y. 69 ; 28 Barb. 121 ; *Lent* v. *Howard,* 89 N. Y. 169 ; *Hood* v. *Hood,* 85 id. 561, 571 ; *Power* v. *Cassidy,* 79 id. 604 ; *Flannigan* v. *Flannigan,* 8 Abb. [N. C.] 413 ; *Waldron* v. *Schlang,* 47 Hun, 252 ; 113 N. Y. 665 ; *Bogert* v. *Hertell,* 4 Hill, 492; *Asche* v. *Asche,* 113 N. Y. 232, 235 ; *In re Ransom,* 30 N. Y. S. R. 737 ; *Greenland* v. *Waddell,* 116 N. Y. 234 ; 1 Redf. on Wills, 434 ; *Arcularius* v. *Sweet,* 25 Barb. 403.) The power of sale has not become inoperative because the three years from testator's death, within which the sale was to be made, have expired. (*Waldron* v. *Schlang,* 47 Hun, 252 ; 113 N. Y. 665 ; *Mott* v. *Ackerman,* 92 id. 539, 551.)

*P. M. French* for respondents. Under this will there is no equitable conversion of real into personal property. (*White* v. *Howard,* 46 N. Y. 162; *Newell* v. *Nichols,* 12 Hun, 624 ; *Gourley* v. *Campbell,* 66 N. Y. 173 ; *Hobson* v. *Hale,* 95 id. 588 ; *Wright* v. *Trustees, etc.,* Hoff. Ch. 202.) While a conversion may be implied it must be positive and is implied only

when the design and purpose of the testator is unequivocal, and the implication so strong as to leave no substantial doubt. The direction for the exercise of the power of sale not being imperative, if the intention of the testator can be carried out without conversion, the land will pass as such and not be changed into personalty. (*Scholle* v. *Scholle*, 113 N. Y. 270, 271 ; *Hobson* v. *Hale*, 95 id. 602 ; *Chamberlain* v. *Taylor*, 105 id. 191.) No conversion will be implied in this case because the gifts or devises are invalid. (Laws of 1860, chap. 360 ; 4 R. S. [8th ed.] 2545, § 3 ; *Haxtun* v. *Corse*, 2 Barb. Ch. 521 ; *Chamberlain* v. *Taylor*, 105 N. Y. 194 ; 43 id. 431.) The power of sale contained in "item eighth," being by its terms limited to "within three years from my death," has now expired by reason of non-user within the specified time. The direction is to sell within three years, and this implies they are not to sell after that time. (*Richardson* v. *Sharpe*, 29 Barb. 222 ; *Dunshee* v. *Goldbacher*, 56 id. 579.)

FOLLETT, Ch. J. The only question presented by this appeal is whether the testator's realty is converted by the will into personalty. The fee of the farm is not devised, nor is the fee of the house and lot, and both, upon the death of the testator, descended to his heirs at law, George H. Bristol and Larius F. Bristol, Jr., subject to the life estate of the widow in the house and lot, or to her dower right in both, as she may have elected, and also subject to such legacies, if any, as are charged upon the realty. It is evident from the face of the will that the testator did not intend to die intestate as to any part of his estate. In all of the divisions of his will, subsequent to the seventh, he speaks of the residue of his estate, which he disposes of as such in those provisions. This will was executed just fourteen months before the testator's death, and it is not asserted that his liabilities were increased, or the amount or character of his estate changed within that period, and at his death his debts exceeded his personalty. He directed, by the second division, that there should be invested for the benefit of his widow $4,000, the interest upon which

is to be paid to her semi-annually during life, and he bequeathed to nephews and nieces legacies amounting to $1,600, making the aggregate amount of legacies $5,600, none of which can be paid without resorting to the real estate, which fact must have been as evident to the testator at the date of his will and at all times thereafter as it is now apparent to the court. Within the rule laid down in *McCorn* v. *McCorn* (100 N. Y. 511) the legacies bequeathed in the second, fourth, fifth and sixth divisions of the will are a charge upon the realty, and must be provided for out of the avails produced by a sale of it.

It is apparent, we think, from the face of the will, taken in connection with the situation of the testator's estate, that he must have intended that his farm should be sold and converted into money within three years after his death and the legacies for the benefit of his widow, nephews and nieces provided for, and that one-fourth of the residue should be paid to the American Bible Society, and three-fourths of it to the trustees of the General Assembly of the United Presbyterian Church of North America; and that within three years after the death of his widow the house and lot should be sold, and the avails thereof, together with the $4,000 invested for her benefit, be paid in like proportions to those corporations. When a will expressly confers power upon the executors to convert real estate into money, and it is evident that the testator contemplated that it must be done for the purpose of carrying the will into effect, and it appearing that in no other way can the intent of the testator be effectuated, the realty will be deemed to have been converted into personalty. (*Hood* v. *Hood*, 85 N. Y. 561; *Lent* v. *Howard*, 89 id. 169; *Moncrief* v. *Ross*, 50 id. 431; *Fisher* v. *Banta*, 66 id. 468; *Clift* v. *Moses*, 116 id. 144.)

This will does not, in express terms nor by implication, confer upon the executors power to determine whether or not a sale shall be made, but vests them with discretion when, within specified periods, both pieces shall be sold. Nor can the inference be drawn from the will and the situation of the

estate that he did not absolutely intend to require his executors to convert his realty into personalty for the purpose of carrying out his intentions, for as before stated, in no other way could he have anticipated that they could be carried into effect. The eighth and ninth divisions should be read as though separated by a comma and connected by the relative "which," it being clear that the testator in the ninth and subsequent divisions referred to the avails of his estate after payment of debts, charges, funeral expenses, legacies and expenses of administration mentioned in the eight divisions.

This case is not within the reason of *Scholle* v. *Scholle* (113 N. Y. 261), in which every devise and legacy could be satisfied without a conversion of the realty into money, while in the case at bar none of them except the devise of the life estate in the house and lot to the widow can be without a conversion. A conversion being absolutely indispensable to carry out the purposes of the testator, and a power to convert being expressly given to his executors, it must be held that it was his intention that the realty should be sold for the purpose of carrying out the provisions of his will.

The judgment is modified as follows : (1) The part which adjudges : " That under the said will there is no equitable conversion of any of the real estate into personal property," is reversed, and it is adjudged that the realty of which the testator died seized is converted into personalty. (2) The part which adjudges : " That the portion of the real estate of said John McNaughton, mentioned in said items numbers 10, 11 and 12 of his will, are not disposed of by said will, but descend to his heirs at law," is modified by adding thereto the words " subject to the power and duty of the executors to sell and subject to the trusts declared in the 8th, 9th, 10th, 11th and 12th divisions of the will." (3) It is adjudged to be the duty of the executors to sell the farm and out of the avails pay the costs allowed in this action, and subject to the claims of creditors pay the legacies for the benefit of the widow, nephews and nieces, and one-fourth of the residue (subject to the limitation of chapter 360, L. 1860) to the American

Bible Society, and three-fourths of the residue, subject to the limitation of that chapter, to the Trustees of the General Assembly of the United Presbyterian Church of North America. (4) After the death of the widow the house and lot and household furniture must be sold and the avails thereof together with the sum invested for her benefit paid (subject to the limitation of chapter 360, L. 1860), in like proportions to said corporations. (5) That part of the judgment which awards to the guardian *ad litem* $68.38 costs against the Trustees of the General Assembly of the United Presbyterian Church of North America is reversed, and it is adjudged that said costs be paid to said guardian *ad litem* out of the estate. The Trustees of the General Assembly of the United Presbyterian Church of North America are allowed taxable costs in the General Term and in this court payable out of the estate, and the guardian *ad litem* is allowed taxable costs in this court payable out of the estate.

The judgment as so modified is affirmed.

All concur.

Judgment accordingly.