[7] It is conceded by all the parties in court that the will of Mrs. Vosseler cannot be construed as .intending to vest a life estate in the named beneficiaries and a remainder in their heirs. The devise is not to a class, but rather in fee to the devisees named. As stated before, the words "heirs and assigns" are mere words of limitation and do not import a substitution (Bolles v. Bacon, 3 Dem. Sur. 43; Matter of Wells, 113 N. Y. 396, 21 N. E. 137, 10 Am. St. Rep. 457), and the doctrine of lapse applies unless the· testamentary gift was substitutional, which I hold it was not. The devise to Mrs. Helbig having lapsed, testatrix must be deemed to have died intestate as to that part of her estate which she sought to dispose of for the benefit of Mrs. Helbig.

Settle decree accordingly.

---

(88 Misc. Rep. 463)

### In re BAMFIELD et al.

(Surrogate's Court, Niagara County.　December, 1914.)

1. WILLS ☞439—CONSTRUCTION—INTENTION.

 In construing a will, the court should ascertain and give effect to the testator's intention.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. ☞439.]

2. CONVERSION ☞15—CONSTRUCTION OF WILL.

 There is no conversion of realty into personalty, or personalty into realty, taking effect at testator's death, unless such clearly appears to have been testator's intention.

 [Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28–37, 52; Dec. Dig. ☞15.]

3. WILLS ☞826—CONSTRUCTION—POWER OF SALE—REALTY.

 Where a will, authorizing executors to sell testator's realty, declared that the only realty left by him other than that specifically devised, and which he believed more valuable than it was, should not be sold, and it clearly appeared that testator intended that title thereto should vest in his residuary devisees, subject to the lien of certain specific legacies, such title was subject to be divested by the· exercise of the executors' power of sale.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2128–2138; Dec. Dig. ☞826.]

4. WILLS ☞826—CONSTRUCTION—SPECIFIC LEGATEES—RIGHTS—RENTS AND PROFITS.

 Where such realty is inadequate to pay the lien of the specific legacies, the specific legatees, by an appropriate equitable action, and through a receiver, may acquire possession prior to the sale by the executors; but until then the executors are owners of the legal title, and are entitled to possession, rents, and profits.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2128–2138; Dec. Dig. ☞826.]

Judicial settlement of the account of Margaret M. Bamfield and another, as executors of the estate of John Maloney, deceased. Decreed according to opinion.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Killeen, Karl & Chapin, of Buffalo (Henry W. Killeen, of Buffalo, of counsel), for executors.

John F. Kinney, of Rochester, for specific legatees.

John Pierce Langs, of Niagara Falls, for receiver.

FISH, S. Upon this accounting, the following questions arose: (1) As to whether the testator intended to charge upon his real estate specific legacies; (2) as to whether the testator intended to work a conversion of his real estate into personal property. It was determined that such specific legacies were a charge upon the real estate; but the second question was not determined, inasmuch as a decision thereof was not necessary to a complete determination of the matters then involved.

A motion is now made by one of the executors, who is a residuary devisee, to reopen this proceeding and file an amended account, for the reason that there is contained in the account as rendered rents and profits of the real property of the decedent known as the Harvey House, which were collected by the executors from the date of testator's death to the date of the sale thereof by the executors under a power of sale contained in the will. The real estate left by the testator consisted of two lots, which were specifically bequeathed, and the said real property known as the Harvey House, and the claim is now made that these rents and profits belong to the residuary devisees named in the will as owners of the legal title thereof, and do not properly form a part of the executor's account. This depends upon whether under the will there was an equitable conversion of this real property into personal property. If there was not such equitable conversion, taking effect at the date of testator's death, then the title to this Harvey House real property vested in the residuary devisees subject to be divested by the exercise of the power of sale contained in the will, and such devisees would be entitled to such rents and profits unless the specific legatees acquired possession of the real property on account of the inadequacy of their security. Clift v. Moses, 116 N. Y. 157, 22 N. E. 393; Coann v. Culver, 188 N. Y. 9, 80 N. E. 362.

The will in question and the extent of testator's property at the time of its execution have been given in a former opinion rendered by me herein. The first clause directs the payment of testator's debts and funeral and administration expenses as soon after his death as possible, clauses 2 and 9, both inclusive, contain specific legacies aggregating $18,300 and a specific bequest of the two lots aforesaid, and then follow clauses 10, 11, and 12, which read as follows:

"Tenth. All of the rest, residue and remainder of my property, real, personal and mixed and wheresoever the same may be situated, I give, devise and bequeath unto my granddaughter Leonore Bamfield Moritz, and my daughter Margaret Bamfield, and my two grandchildren Louisa B. Maloney and Martha Maloney, and my grandson Doctor Thomas F. Ellis as hereinbefore mentioned, in the following proportions, to wit: To said Leonore Bamfield Moritz one-third thereof; to said Margaret Bamfield one-third thereof; to Louisa B. Maloney and Martha Maloney each one-ninth thereof and to said Dr. Thomas F. Ellis one-ninth thereof.

"Eleventh. I give to my executors full power to sell, without application to any court, any and all of said property, whether real or personal, and to invest and reinvest the proceeds thereof as in their judgment may seem proper,

and to execute and deliver all necessary deeds of conveyance and other papers necessary to convey the title thereto.

"Twelfth. It is my wish and desire that my devisees shall retain one-half of the north wall of the Harvey House, in case of sale of said property by them, for the reason that said side wall shall be valuable to them for the purpose of erecting a new building on the adjoining property which is owned by me. A new building thereon can be rented and the profits could be applied on the debt on said property and would be a good investment in my opinion."

[1, 2] The fundamental rule in the interpretation of wills is that the intention of the testator governs and it is the duty of the court to ascertain such intention and give force and effect thereto (Matter of James, 146 N. Y. 100, 40 N. E. 876, 48 Am. St. Rep. 774), and this rule is applicable to questions of equitable conversion. There is no conversion of realty into personalty, nor personalty into realty, taking effect at the time of testator's death, unless it can be seen by the court that the testator intended such a conversion. Scholle v. Scholle, 113 N. Y. 261, 21 N. E. 84; 7 Am. & Eng. Enc. of Law (2d Ed.) 465; Clift v. Moses, supra; 40 Cyc. 1386.

All the canons of construction are merely rules which the experience of centuries developed for ascertaining the intention of the testator. Roosa v. Harrington, 171 N. Y. 341, 64 N. E. 1; Cammann v. Bailey, 210 N. Y. 19, 103 N. E. 824. The great question here, as in all cases, is what was the intention of the testator? The only real estate left by the testator, other than the two lots specifically bequeathed as aforesaid, consisted of this Harvey House, which is located in the city of Niagara Falls; and in the twelfth clause, above quoted, the testator has clearly shown that he intended that this property should vest in the residuary devisees upon his death, and should not be converted into personal property. A court will not interfere to change the quality of property as left by a testator, in the absence of a clear and unequivocal intention on his part to make such change. King v. King, 13 R. I. 501; Clift v. Moses, supra.

There is a line of cases in the court of last resort in this state, among them Lent v. Howard, 89 N. Y. 176, and Fraser v. United P. Church, 124 N. Y. 486, 26 N. E. 1034, in which it was held that although a power of sale was discretionary a conversion was indispensable to carry out the purposes of the testator, that therefore he intended a conversion, and that realty was converted into personalty by his will taking effect at the date of his death; but in all these cases there was a disposition made by the testator in his will of the proceeds of his realty, and before this distribution could take place a sale necessarily had to be made.

The reasoning upon which all these decisions are based is the same, and is expressed in Power v. Cassidy, 79 N. Y. 614, 35 Am. Rep. 550, as follows:

"Where a testator authorizes his executors to sell real estate, and it is apparent from the general provisions of the will that he intended such real estate to be sold, the doctrine of equitable conversion applies, although the power of sale is not in terms imperative."

[3] Here there is a power of sale, but it is not apparent from the will that the testator intended that the Harvey house should be sold.

In fact, he has expressly stated otherwise in the will itself. It is impossible to read this will, even in the light of the situation and value of the testator's property at the time of the making of the will, without being convinced that he believed that the Harvey House was much more valuable than it subsequently proved to be, and that he intended that the title thereto should vest in the devisees mentioned in said tenth clause, subject to the lien of the specific legacies aforesaid, which these devisees could pay out of this Harvey House and still have a substantial equity therein.

[4] The title to this real property in question vested in the residuary devisees named in said tenth clause, subject to be divested by the exercise of the power of sale contained in the will. Erwin v. Loper, 43 N. Y. 525. There was no conversion until the sale by the executors, and such devisees would be entitled to the rents and profits from the death of the testator to the date of sale. 18 Cyc. 304; Coann v. Culver, supra; White v. Howard, 46 N. Y. 144; Matter of Van De Walker, 79 Misc. Rep. 661, 141 N. Y. Supp. 325.

Of course, the specific legatees had a lien upon this real property as security for the payment of their respective legacies; and, the real property being inadequate for the payment of the liens, they could undoubtedly have acquired possession prior to the sale in an appropriate equitable action and through a receiver. But, until the arm of equity reached out and took possession of the property, the owners of the legal title would be entitled to possession and the rents and profits arising therefrom. It is probably true, also, that the specific legatees would not have to resort to a court of equity to obtain such possession if the residuary devisees surrendered possession of the property to them or their representatives. It does not appear just how the executors came to take possession of this property and collect these rents and profits, and they ask for permission to show this upon this new accounting.

The application is granted, upon payment by the executors to the attorney for the specific legatees of the sum of $50.

Decreed accordingly.