In the Matter of the Estate of MARGARET SCHUSTER, Deceased.

Surrogate's Court, Richmond County, March 24, 1941.

*L. W. & A. B. Widdecombe,* for Charles G. Keutgen, as executor, etc.

*Edward G. Baker,* for the Richmond County Society for the Prevention of Cruelty to Children.

*William A. Smith,* for the Trustees of Staten Island Lodge of Elks, No. 841 (Crippled Kiddie Clinic, Inc.).

*George N. Whittlesey,* for The Children's Aid Society.

*Dobson & Moorehead,* for The Imperial Council, etc., a Colorado corporation.

*Sullivan, Donovan & Heenehan,* for the New York Society for the Prevention of Cruelty to Children.

*Peter F. Gulotta,* special guardian.

BOYLAN, S. This is a construction proceeding instituted by the executor named in decedent's will which is dated March 16, 1932,

and was admitted to probate on June 19, 1940. The decedent disposed of her residuary estate by paragraph tenth of her will which reads as follows:

" 10. All the rest, residue and remainder of my property real and personal, of whatsoever kind and wheresoever situate I give, devise and bequeath in equal shares to the Krippled Kiddies Fund of Lodge No. 841 of the Benevolent and Protective Order of Elks; to the Shriners Hospital for Crippled Children of the Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America, a corporation; to the Society for the Prevention of Cruelty to Children to be expended only for its branch on Staten Island and to the Children's Aid Society to be expended only for the Goodhue Home."

The questions of construction presented as to this paragraph of the will are as follows:

1. Since there is no fund known as the " Krippled Kiddies Fund of Lodge No. 841 of the Benevolent And Protective Order of Elks " or fund having a similar name with a legal entity and since said lodge organized and was interested in a domestic corporation known as " Crippled Kiddie Clinic, Inc.," does that corporation, or the corporation known as the Benevolent and Protective Order of Elks, or the local lodge of that order, take the gift to the Krippled Kiddies Fund under the residuary clause in decedent's will, or is there an intestacy as to that gift and in such event who takes and in what shares?

2. Since there is no corporation known as the " Shriners Hospital for Crippled Children of the Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America," but there is a Colorado corporation known as " The Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America," which conducts the Shriners' hospitals for crippled children, owned and controlled by " The Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America," does such Colorado corporation take under the residuary clause in decedent's will, or is there an intestacy as to such gift, and in such event who takes and in what shares?

3. Did decedent, by her gift of a share of her residuary estate to the " Society for the Prevention of Cruelty to Children " intend to benefit the Richmond County Society for the Prevention of Cruelty to Children, or The New York Society for the Prevention of Cruelty to Children?

The evidence shows that the husband of the decedent resided on Staten Island for upwards of thirty-five years; that he was a Mason and a member of Klopstock Lodge Free and Accepted Masons at the time of his death in 1931; a member of Palestine

Commandery of Knights Templar No. 18; a member of the New York Consistory Ancient Accepted Scottish Rite of Free Masonry and also a member of Mecca Temple, which is a subordinate temple of the Imperial Council of Ancient Arabic Order of Nobles of the Mystic Shrine for North America. He was also a member of Lodge No. 841 of the Benevolent and Protective Order of Elks for about twenty-eight years before his death and was awarded a life membership in this lodge for distinguished service to it. During his membership in this lodge he was particularly interested in its work for the benefit of crippled children.

The evidence further shows that there is a Richmond county society for the prevention of cruelty to children and a New York society for the prevention of cruelty to children and that the latter society has not nor did it ever have a branch on Staten Island.

Misnomer or misdescription of an intended beneficiary, whether an individual or a corporation, does not necessarily invalidate the bequest or devise. " A misnomer or misdescription of a legatee or devisee, whether a natural person or a corporation, will not invalidate the provision or defeat the intention of the testator, if, either from the will itself or evidence dehors the will, the object of the testator's bounty can be ascertained. No principle is better settled than that parol evidence is admissible to remove latent ambiguities, and when there is no person or corporation in existence precisely answering to the name or description in the will, parol evidence may be given to ascertain who were intended by the testator. A corporation may be designated by its corporate name, by the name by which it is usually or popularly called and known, by a name by which it was known and called by the testator, or by any name or description by which it can be distinguished from every other corporation; and when any but the corporate name is used, the circumstances to enable the court to apply the name or description to a particular corporation and identify it as the body intended, and to distinguish it from all others and bring it within the terms of the will, may, in all cases be proved by parol. (*St. Luke's Home* v. *Association for Indigent Females*, 52 N. Y. 191; *Holmes* v. *Mead*, Id. 332; *Gardner* v. *Heyer*, 2 Paige, 11; 1 Jar. on Wills, 330; 1 Redf. on Wills, 691, § 42, pl. 40; id., 695, pl. 49.) " (*Lefevre* v. *Lefevre*, 59 N. Y. 434, 440.)

In *Matter of Murdoch* (142 Misc. 186) a bequest was made to the " Royal Infirmary at Nottingham, England." Testimony was received by the court to the effect that a search in Nottingham revealed no institution by that name in existence; that there were in all seven hospitals and infirmaries in that city; that the testator had been specially interested in an institution located in Nottingham, named the " Nottingham General Hospital;" that his wife

had been a patient at that hospital for a considerable period and had eventually died there; that the Nottingham General Hospital was extensively patronized by royalty. Upon the testimony as above outlined, the court concluded that the beneficiary intended and designated by the testator was the Nottingham General Hospital and directed payment of the legacy thereto.

The language of the will together with the proof shows that the testatrix intended to benefit the corporation known as "Crippled Kiddie Clinic, Inc.," the Colorado corporation known as "The Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America" and the "Richmond County Society for the Prevention of Cruelty to Children." Each of these charities receives one-quarter of the residuary estate and the Children's Aid Society receives the other one-quarter to be expended only for the Goodhue Home.

The decedent gave her executor power to sell by paragraph 12 of her will, the pertinent part of which reads as follows:

" 12. I hereby authorize and empower my said executor in the administration of my estate to sell any property, real or personal or any interest therein at public or private sale for cash or on credit on such terms as he shall deem expedient; to postpone for any length of time not exceeding five years the sale, calling in or conversion of any part of my estate; to lease any property, real or personal; to mortgage the same or create a lien thereon * * *."

Is this power of sale mandatory? From the words used by the testatrix, such as "in the administration of my estate" and "to postpone for any length of time not exceeding five years the sale," the court infers that the testatrix intended division and distribution by her executor and that her intention was to be carried out by the power of sale. The language of paragraph 12 is tantamount to a direction, " I give you power to sell my realty and you may exercise your discretion as to manner and terms of sale but you must sell within five years." (See *Fraser* v. *Trustees, etc., U. P. Church*, 124 N. Y. 479, 481, 482, 485; *Mott* v. *Ackerman*, 92 id. 539, 550, 551.)

The executor being clothed with the power and it being the executor's imperative duty to sell the testator's real estate, the same will be deemed converted into personalty. (*Underwood* v. *Curtis*, 127 N. Y. 523, 532; *Hope* v. *Brewer*, 136 id. 126, 134; *Wechsler* v. *Drey*, 203 App. Div. 692, 698.) The court holds that the power of sale contained in paragraph 12 of decedent's will is mandatory, that there is an equitable conversion of decedent's realty into personalty and that the executor must sell the realty within the time prescribed in the will.

Submit decree on notice.