In the Matter of the Accounting of Oswald A. Holzer, as Administrator C. T. A. of Julia Bondy, Deceased.

Surrogate's Court, New York County, November 5, 1952.

*Edwin Hort* for administrator *c. t. a.,* petitioner.

*Daniel E. O'Keefe* for National Surety Corporation, respondent.

*Francis Schmolka,* as creditor, respondent in person, and for Valerie Marik and others, respondents.

*Arthur J. W. Hilly,* special guardian for Jan Holzer, an infant, and others, respondent.

COLLINS, S. Testatrix, who was a United States citizen and a resident of this city, was sojourning in Czechoslovakia at the outbreak of the most recent World War. She executed her will on July 19, 1943, in Czechoslovakia and died there in the following month. Testatrix bequeathed a single specific legacy and disposed of the balance of her estate in fractional shares to persons related to her by blood or marriage who were residents of Europe. War conditions delayed the probate of the will and occasioned considerable difficulty in obtaining information respecting the legatees, a number of whom had been transported to concentration camps. Since the termination of active hostilities judicial findings have been made in European courts as to the deaths of absentee relatives of testatrix. The foreign decrees establishing the deaths of these absentees have been premised upon the presumption arising under the laws of the foreign jurisdictions from the circumstances of the absentees' disappearances and their absence for an extended period of time. The decrees have fixed arbitrary dates of death in conformity with the applicable presumption arising from the circumstances of absence.

In the instant proceeding stipulated proof has been presented as to the deaths of certain of these persons. The court finds that Arnost Holzer, Hedvika Porgesova, Olga Klein, Karel

Klein, Jiri Klein, Arnost Furth, Francis Furth, Josef Furth, Jirina Furth and Irene Furth predeceased testatrix and that Olga Winternitz, Leo Holzer, Paula Porgesova, Arthur Porges and Otto Porges survived testatrix but died prior to the probate of her will. Proof is lacking to permit findings as to the deaths of other persons cited in this proceeding.

The will provides: " In the event that any one of the aforementioned legatees should be unable to take the legacy for any reason whatever (death, whereabouts unknown etc.) the appointed heir Jaroslav Marik is obligated to pay out in equal shares the legacy thus being vacated to the children of such legatee as listed above ". This language presents the question whether testatrix, in referring to the inability of a legatee to take by reason of death, unexplained absence or other circumstances, intended the test of ability to take to be applied as of the date of her own death or the time for payment of the legacies. Had testatrix referred in her will only to the possible death of a legatee, a basis would exist for construing decedent's purpose as one to prevent the lapse of a legacy in case a legatee should predecease the testatrix. However, decedent's statement was not so limited but extended to contingencies other than death that would render a legatee unable to take. The second contingency that is specifically defined in the will is the possibility that a legatee's whereabouts should not be known. It hardly can be said that testatrix intended this contingency to apply only as of the moment of her own death. The legatees named in the will were the primary objects of her bounty. Their children were substitutionary legatees. It must be concluded that testatrix did not intend a legacy to be withheld from a named legatee who was present at the time for distribution of the estate if that legatee's whereabouts might not have been known at the date of testatrix' death. The word " take " as employed in the will signifies more than a bare legal claim to a legacy and connotes the ability to receive and enjoy the testamentary gift. The use of the expression " the legacy thus being vacated " would be inappropriate to a legacy that lapsed by nonsurvival since a lapsed legacy would never come into being and could not be vacated.

It is apparent, without going beyond the will, that the purpose of testatrix was to bequeath legacies that would vest in the possession of persons capable of using and enjoying the funds at the time payment would be made by the estate representative. Reading the will against the circumstances surrounding its

execution this purpose of testatrix becomes obvious. The will was executed in a foreign country under chaotic conditions that prevented testatrix from returning to her home. The fact that her assets were in this country would require administration here and there was good reason to foresee that the administration would be delayed by war conditions. The legatees were European Jews. It appears that some of them had been swept into concentration camps prior to the date of the will although it cannot be said that testatrix was aware of that fact. All the circumstances existing at the date of the will clearly disclose a motive to effect an ultimate distribution of the estate directly to living persons capable of taking possession of the property at the time of such distribution.

The court holds that the legacies vested seven months following the issuance of letters testamentary, at the conclusion of the normal executorial administration of the estate (*Matter of Herrmann*, 193 Misc. 466; *Matter of Powers*, 98 N. Y. S. 2d 457 and cases there cited).

Among decedent's assets at the date of her death was certain real property that had been acquired through foreclosure proceedings conducted on her behalf by her attorney in fact during the time decedent was in Europe. Decedent's will does not contain an explicit reference to real property but does provide that the universal heir receive '' all of the estate '' with the obligation to pay legacies constituting fractional shares of the whole. It has been held that the will contains a power of sale which authorized the administrator *c. t. a.* to sell the real property for the purpose of making distribution of decedent's assets in conformity with her testamentary directions (N. Y. L. J., Oct. 26, 1951, p. 1010, col. 1). This power of sale coupled with the fact that in no other way might the intention of the testatrix be effectuated must be deemed to have converted the realty into personalty (*Fraser* v. *Trustees of General Assembly of United Presbyterian Church*, 124 N. Y. 479; *Matter of Merritt*, 273 App. Div. 79; *Matter of Schuster*, 175 Misc. 1072; *Matter of Cooley*, 166 Misc. 740; *Matter of Maguiro*, 82 N. Y. S. 2d 198).

The will lacks a general residuary provision. The legatee, Josef Furth, predeceased testatrix and left no issue surviving him. This share of the estate passes as intestate property of testatrix. Lacking information sufficient to identify the distributees of testatrix at this time, the property passing in intestacy will be deposited in the city treasury for the benefit of the distributees of testatrix. The share of any legatee now

residing in Czechoslovakia and of any person who resided in that country at the time of his or her death and of whose estate no legal representative is acting in this jurisdiction also will be deposited with the city treasurer pursuant to section 269 of the Surrogate's Court Act (*Matter of Braier,* 108 N. Y. S. 2d 417, affd. 279 App. Div. 1008; *Matter of Best,* 200 Misc. 332).

Testatrix specifically bequeathed shares of stock of a Czechoslovakian corporation. The account of the administrator *c. t. a.* states that he has been unable to locate the certificate for such shares and that it cannot be determined whether or not testatrix owned such shares at the time of her death. It is indicated that the shares, if in existence, would be valueless. No objection to the failure of the administrator *c. t. a.* to charge himself with this possible asset has been made by the legatee and accordingly the administrator *c. t. a.* will be discharged from any liability with respect to such shares of stock.

The attorneys for the administrator *c. t. a.* are allowed a total fee of $5,250 for services rendered and to be rendered to the conclusion of this proceeding. The attorneys' disbursements and the fee and disbursements of the expert on foreign law are allowed as requested.

When the account has been supplemented by a schedule apportioning the estate tax, a decree may be submitted on notice settling the account.